IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NEAL S. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.:S 02-3049 |
| | ) |
| CONTINENTAL CASUALTY COMPANY | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF CROSS MOTION FOR SUMMARY JUDGEMENT**

Plaintiff, by and through counsel, hereby sets forth his Memorandum of Points and Authorities in Support Plaintiff's Opposition to Defendant's Motion for Summary Judgement and, in doing so, states the following:

PRELIMINARY STATEMENT:

Defendant continues to mischaracterize both evidence of record as well as the case law in its attempt to support the otherwise unsupportable and wrongful denial of benefits to the Plaintiff despite overwhelming evidence supporting disability.

ARGUMENT:

I.  Continental's review was absolutely incorrect in accordance with the *Laser* and *Watson* decisions and mirrors its past conduct is similar situations.

In *Laser v. Provident Life & Accident Ins. Co.*, 211 F. Supp.2d 645, 649 (2002), this court specifically stated that:

> a defendant's dual role in both administering and insuring [a] plan creates at least the potential for a conflict of interest, because defendant "bears the financial consequences and reaps the financial rewards – of its own coverage decisions." citing *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 151 (4th Cir. 1996).

1

Based on this reasoning, the court applied the modified abuse of discretion standard set froth in *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783 (4th Cir. 1995); *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 8.0, 87 (4th Cir. 1993); *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335 (4th Cir. 2000). The clear and undisputed evidence in the corporate disclosure demonstrates a similar conflict of interest which should render result in modified abuse of discretion review in this matter.

The *Laser* case stated that "the record reveals numerous instances in which defendant mischaracterized the evidence and one instance in which it made a potentially material error." *Id*. at 651. This direct quote contradicts Defendant's assertion that only one "material error" although, but for this error, the case would have been reversed rather than remanded.

Defendant again fails to note an important holding in *Watson v. UnumProvident Corp.*, 185 F. Supp.2d 579 (D.Md. 2002). As in *Laser*, the Court found that the insurer's dual role as insurer and administrator resulted in a conflict of interest so as to justify a sliding scale review utilizing the defendant's reasonableness in its decision as a factor and citing the same line of cases. *Id*. at 584. Further, due to the "unprincipled, if not fraudulent, deliberative process" involved in the case, this Court did not need to decide whether substantial evidence supported the claim denial. *Id*. at 587. However, as Plaintiff continues to contend, there is no substantial evidence presented by the Defendant on which to base its denial and for which a determination is sought from this Court.

It should be noted that the Defendants failed to address the holdings in other Fourth Circuit authority cited. Where the medical evidence is not reasonably read by an insurer, a denial of benefits cannot be supported. *Myers v. Hercules*, 253 F.2d 761 (4th Cir. 2001)(insurer citing

to only small portions of medical record and taking evidence out of context). Similar conduct occurred when the insurer overlooked crucial evidence, choosing to evaluate only some of the evidence of record. *Hines v. Unum*, 110 F. Supp.2d 458 (S.D.Va. 2000).

In his Opposition Memoranda, Plaintiff also cited a long string of cases from other jurisdictions and Social Security cases, all of which addressed the improper conduct in undertaking unreasonable review by utilizing only selected portions of medical records. These were also not addressed by the Defendant as this type of conduct has been severely chastised in many jurisdictions.

Where Continental Casualty Company funded and administered a plan, lessened deference to the degree necessary to neutralize any untoward influence resulting from the conflict of interest was undertaken. *Shields v. Continental Casualty Co.*, 209 F. Supp.2d 1167 (2002). This matter contains admitted evidence of financial self-dealing and actual funding and administering of the plan by related entities. In *Spanos v. TJX Comps., Inc.*, 220 F. Supp.2d 67, fn10 (2002), the court stated that a presumption of a conflict of interest occurs if CNA were to be both the funding source and plan administrator. Rulings have gone so far as to presume that if a plan fails to produce evidence demonstrating that the conflict of interest did not affect the decision to terminate benefits, a *de novo* standard of review will apply. *Lang v. Long Term Disability Survivorship Plan*, 266 F.3d 794, 798 (9th Cir. 2001), insufficiency of those reasons, *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999); also cited in *Waggener v. Unum Life Ins. Co. of Am.*, 238 F. Supp.2d 1179 (2002). See Also *Medford v.* MetLife, 244 F. Supp.2d 1120 (D. Nev. 2003); *Sanderson v. Continental Cas. Co.*, 2003 WL 470539 (D.Del.).

Defendant's claim that Plaintiff "eschewed his promise to limit the evidence to the facts

in the administrative record" is ridiculous. The case law is the case law. Plaintiff makes no excuses for facts contained in the case law which demonstrate that the Defendant has operated under a conflict of interest in the past and has been punished for its practices. Defendant's inability to contradict its past conduct as reflected in judicial decisions is no excuse for making unsupported accusations against the Plaintiff for his citation of this clearly favorable case authority.

II.     <u>Defendant's failed to give any weight to the well-supported findings of the treating and examining physicians</u>.

During the briefing process, a decision was rendered by the United States Supreme Court in *The Black & Decker Plan v. Nord*, No. 02-469 (May 27, 2003). The decision stated that "plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a claimant's treating physician," but did not find that special weight should be afforded to the findings of treating physician.

In the process of considering the relative weight of a treating physician opinion, it has been ruled in *Gallagher v. Reliance Standard Life Ins. Co.*, 171 F. Supp.2d 594,604 (W.D.N.C. 2001) that "a physician's opinion is the best evidence for determining when and if an applicant has crossed the threshold of manageable pain." In addition, it has been found that a doctor's medical findings are most helpful in determining what impairments are interfering with a plaintiff's ability to work and a treating physician's finding is not entitled to summary acceptance, but is given great weight. *Conrad v. Continental Casualty Co.*, 232 F.Supp.2d 600, 605 (E.D.N.C. 2002) citing *Austin v. Continental Casualty Co.*, 216 F.Supp.2d 550 (W.D.N.C. 2002).

The greater weight to be afforded a treating physician opinion has been

addressed specifically in *Hawkins v. First Union Corp. LTD Plan*, 2003 WL 1908088 (7th Cir.) in which it was held that:

> ...such skepticism may have a stronger basis when the treating physician squares off against a neutral consultant appointed by the Social Security Administration than when the consultant is hired by the administrator of a private plan and so may have a financial incentive to be hard-nosed in his claims evaluation to protect the financial integrity of the plan and of the employer that funds it. *Id*. citing *Ladd v. ITT Corp.*, 148 F.3d 753, 754 (7th Cir. 1998); *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052 - 53 (7th Cir. 1989). If the incentives of the treating physician and of the plan's consultant are assumed to be equal and opposite, consideration of incentives drops out and the superior information likely to be possessed by the treating physician, especially when as in this case **the consultant does not bother to examine the patient,** may support the treating physician presumption after all. See *Bali v. Blue Cross & Blue Shield Ass'n.*, 873 F.2d 1043, 1048 (7th Cir. 1989); cf. *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir. 1971)(emphasis added).

Dr. Soriano's discounting of Plaintiff's pain runs contrary to the case law. It has been ruled in *Conrad v. Continental Casualty Co.*, 232 F. Supp.2d 600, 604 that:

> "[be]cause pain is not readily susceptible to objective proof...the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." *Hyatt v. Sullivan*, 899 F.2d 329, 336 (4th Cir. 1990). The Fourth Circuit has further held that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 920 (4th Cir. 1994) (J. Hall concurring). Though these cases were decided in the context of Social Security Disability benefits, it is relevant and applicable in the context of an ERISA determination. See, *Willis v. Baxter Int'l., Inc.*, 175 F. Supp.2d 819, 833 (W.D.N.C. 2001).

As stated in *Watson v. UnumProvident Corp.*, 185 F. Supp.2d 579, 581-2) (D.Md. 2002), the decision of a parent company to rely upon a paper review without ordering an independent medial examination was a cause for concern. Cited favorably in *Laser v. Provident Life & Accident Ins. Co.*, 211 F. Supp.2d 645 (2002).

The many instances of biased reporting by the Defendant and by its hired reviewer, Dr. Soriano of NMR, addressed in depth in Plaintiff's Memorandum in Opposition serve to underscore his bias and have not been rebutted by the Defendant.  These many instances of selective quoting and interpretation were not the product of a reasonable review in this case.  Thus, the fact that the medical record was placed in front of Dr. Soriano in no way makes his review reasonable, fair, complete, or credible.

<u>Defendant fails to address the current case law criticizing the past conduct of Network Medical Review in similar situations.</u>

The Defendant improperly points to this counsel's prior participation in *Coffma v. MetLife Ins. Co.*, 217 F. Supp.2d 715 (S.D.W.V. 2002) to support its position.  Although benefits were denied by the District Court, the Defendant fails to note that the matter has been appealed to the United States Court of Appeals for the Fourth Circuit and is pending review.

Defendant's characterization concerning Plaintiff's counsel's "invective" and "shrill" tone are entirely inappropriate.  The Defendant in casting aspersions at its opposing counsel fails to address the recent case law concerning NMR, failing to address the cases in their entirety.

This conduct by NMR has been criticized in several case including    *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1143 (9th Cir. 2001) in which it was held that:

> the conflict of interest when benefit plans repeatedly hire particular physicians as experts [since] these experts have a clear incentive to make a finding to save their employers money and to preserve their own consulting arrangements.

This exact language was cited again favorably concerning use of NMR's services in *Darland v. Fortis Benefits Benefits Insur. Co.*, 2003 WL 141620 (6th Cir.(Ky)).

Further evidence of NMR's bias was set forth in *Austin v. Continental Casualty Co.*, 2002 WL 1969342 (W.D.N.C.) which stated that NMR's internet materials described the purpose of their reviewing function as to "support the retained functional abilities of an individual." This statement made it clear to the court that this source of referral was not to an "independent" medical examiner as asserted by the defendant. *Id.* at FN1. These cases clearly hold that NMR is a entity beholden to the insurance industry and is continually employed for the sole purpose of procuring medical support for disability benefits denials. *Vartanian v. MetLife*, 2002 WL 484852 (N.D. Ill.)

Further, where plans repeatedly hire the same experts as physicians, there is a conflict of interest. *Regula v. Delta Family Care Disability Survivorship Plan*, 266 F.3d 1134(9th Cir. 1999) cited favorably in *Walker v. LTD Plan of Sponsor Tri-Valley Growers*, 2002 WL 467684 (N.D.Ca. 2002).

Based on the four different insurers utilizing the same medical reviewer for which criticism their practice in on four different occasions and jurisdictions, Defendant's statement that only MetLife was involved is patently absurd. The criticisms cited by Plaintiff were provided by many accomplished jurists (although he admittedly agrees with their findings wholeheartedly) and Defendant's attribution of these criticisms as being derived solely from the Plaintiff is deplorable.

<u>Defendant attempts to advance unsupported allegations concerning several facts and events</u>.

Defendant attempts to rely on a hearsay conversation with Dr. Solomon which purportedly occurred on 11/1/01 (0285). The substance of this conversation was recorded only

by the reviewing physician, Dr. Soriano, hired by the Defendant for the purpose of a creating a denial opinion. There is no confirmation that Dr. Solomon agrees with any part of this self-serving record which would not be admitted in any other court of law due to its hearsay content. To avoid this inherent danger is utilizing physician opinions taken remotely, the Social Security Administration will not accept an unsigned medical opinion. 20 C.F.R. § 404.1519(o) Given the amount of significance Defendant placed on the statements made by Dr. Solomon, there is no explanation why the Defendant failed to send a copy of the statements purportedly made by Dr. Solomon for his signature other than the fact that such statements were not recorded accurately. Further, Dr. Solomon specifically stated in a later note that he could not express any opinion concerning Mr. Smith's condition or functional capacity following his last examination dated 6/11/01 (0231). For these reasons, Dr. Solomon's opinions are not "minimized" as stated by Defendant, but are completely negated.

Plaintiff has clearly stated that Dr. Lowe's finding that Claimant's ability to perform work which allowed him to control the amount of sitting or standing he performed (0500, 0503) is minimized only to the extent that Dr. Lowe's medical opinion did not address the exact duties of Plaintiff's past prior work which involved extensive travel by plane and automobile and well as substantial walking and standing at times and in places where he could not change positions as required by Dr. Lowe's opinion.

Inexplicably, the Defendant continues to refer to predisability reporting which is absolutely irrelevant. The undisputed fact is that the Plaintiff reinjured himself in January, 2001 (CCC 0513). The Defendant seeks to undermine the reinjury by stating that the Claimant carried firewood and rode his bicycle around the neighborhood before this time. Such retrospective and

irrelevant reference serves no purpose to the discussion of whether Plaintiff became disabled in January, 2001, especially given the facts that (1) Plaintiff did not make a claim until February 23, 2001 and (2) Defendant paid Plaintiff disability benefits from the onset of disability through November 6, 2001 (0309 - 12).  Again, such argument by Defendant serves to illustrate the lengths it will go to as part of its bad faith conduct, highlighting the results of its conflict of interest in its dual role in administering and insuring the subject disability claim.

Even more disturbing is Defendant's claim that benefits to Plaintiff were never approved. (Def. Reply Memo., p. 11) and that payments were only made in "good faith" in accordance with its letter dated November 6, 2001 (CCC 0309 - 12).  At no time has the Defendant made a claim to recoup the benefits payments made. Defendant's choice to make "good faith" payments was only undertaken so as not to perpetuate its past "bad faith" conduct in failing to consider Plaintiff's appeal in a timely manner, but while still maintaining its right to request examinations as part of the appeal process.  Further, there is no provision in the Summary Plan Description which allows for "good faith payments."   This factual invention by the Defendant fails to contradict the fact that it decided to terminate Plaintiff's benefits despite no change in his condition.   Its attempts to define payments of benefits in other terms are nonsensical and are not proper under the Summary Plan Description.  It is merely a ploy to avoid the consequences of its actions in denying benefits following approval despite no change in the Plaintiff's condition.

Defendant's accusation that Plaintiff had taken an "adversarial" posture is equally groundless.  (Def. Reply Memo., p. 11).  Plaintiff had requested appeal on July 25, 2001, the Defendant had failed to perform its review within the sixty day period  required under ERISA, 29 CFR §2560.503 - 1(f)(2)(iii)(B).  At that point, Plaintiff demanded a decision in his case and

9

that payment be made. When confronted with the Defendant's request for additional examinations, the Plaintiff replied that the Defendant was not entitled to a "second tier of review." (0314) due to its failure to render a timely decision.

Given the fact that Defendant failed to review the subject claim in a timely manner, it loses its right to deferential review and is subject to de novo review as held in a recent line of cases. *Jebian v. Hewlett-Packard Co.*, 310 F.3d 1173 (9th Cir. 2002); *Gilbertson v. Allied Signal, Inc.*, 2003 WL 21008810 (10th Cir.); *Rodolff v. Provident Life and Acc. Ins. Co.*, 2003 WL 1860855 (S.D.Cal.).

These mischaracterizations of the facts of this case by counsel only serve to mirror the same disingenuous conduct by the insurer he represents. The facts and law cited again demonstrate the need to depart from strict abuse of discretion review and engage in a heightened standard of review or de novo review.

<u>Defendant again fails to address its failure to undertake a full and fair vocational review.</u>

Defendant continues to ignore the statement of Marilyn Schwartz, Director of Human Resources of J.J. Haines, who voiced her concerns about the denial of benefits to Plaintiff since he was unable to function in his capacity, being unable to travel for the purpose of seeing clients or training sales employees. (CCC 0111). The Defendant partially cited to the observations of Bob Thompson, President of J. J. Haines & Comp., noting Plaintiff's inability to drive more than an hour without the need to lie down, inability to stand for more than five minutes, inability to travel by plane 8 -9 months prior to applying for disability benefits. These statements are supported by the Plaintiff's job description for Vice-President of Sales for the Floor Covering Department. (0079 - 0080) The Defendant failed to address Mr. Thompson's additional

observations that Plaintiff's was limited to traveling once a week with interruptions to lie down and was spending most of workday lying on the floor (CCC 0516, 0211). As noted by Mr. Thompson, Plaintiff's position required travel of 3 - 4 days per week, mostly by car.

Plaintiff was assessed by vocational rehabilitation expert, Martin Kranitz, MA, CRC, CVE, CPS. In his report dated 7/19/01 (R0012 - 6), Mr. Kranitz (C.V. at 0351 - 4) summarized Claimant's medical conditions, residual physical functional capacity, recreational activities and work duties as well as including a personal interview. Following this summary, Mr. Kranitz concluded as follows:

> Neal Smith, is a 59 -year-old college graduate who has worked in wholesale sales for many years. In 1995, he began experiencing back problems which resulted in three surgeries (2 fusions) between 1997 and 2000. Since his last surgery, he experienced a brief recovery followed by a gradual decline which currently limits his physical functioning considerably. He reports and physicians support, that he is unable to stand, walk or sit for any length of time and, indeed, finds that he lays down the vast majority of the day. He reports a pain level of 5 if he stays in the house which increases to 7 - 8 if he leaves that house. Even without leaving the house, he experiences a level 10 pain at least once a day, lasting for about 45 minutes on each occasion.
>
> Given these kinds of limitations...it is my belief and opinion that he is not capable of performing any significant gainful employment. That is, competitive employment which requires consistent and ongoing activities in the range of 35 - 40 hours per week.
>
> Given the difficulties with walking, standing, and sitting I do not believe there is competitive work which he could perform.
>
> Given the decrease in production, described by Dr. Launder (36%), it is my belief and opinion that an individual with a 36 percent decrease in production would not be able to perform any type of competitive employment.
>
> Given an individual who has to lay down 75 percent of the day, it is my belief and opinion that there is no competitive employment that such an individual could perform.

>The above are my findings and opinions to reasonable degree of
>professional certainty....

As part of his report, Vocational expert Kranitz reviewed the entire medical record including functional capacity findings and interviewed the Plaintiff, at which time he noted that the Plaintiff was restricted to 15 minutes sitting then lied down on the floor for the remainder of the interview.

The Addendum Report by Vocational Expert, Martin Kranitz, dated 2/8/02 (0238 - 242) states the following:

>I have reviewed the Functional Capacity Evaluation, dated December 20th, 2001, signed by P. Stephen Macedo, M.D. and Eric Meyer, D.C., performed on Neal Smith. This report based on objective findings, helps to confirm my opinions concerning Mr. Smith. It is significant that Mr. Smith failed six of the postural tests and functioned below the 75th percentile on many tasks he was asked to perform.
>
>The limitations for sitting, standing, and walking are even greater than those estimated by Mr. Smith in July, 2001. The report goes on to say that: when the lifting ability is combined with the patient's dynamic functional deficits, his functional capacity is below the sedentary work threshold.
>
>I see nothing in this report that would contradict my conclusions stated in my July, 2001 report. In fact, I believe the limitations found in the Functional Capacity Evaluation strengthen my conclusions.

Instead of considering the overwhelming vocational evidence of record supporting Plaintiff disability, Defendant continues to rely upon Dr. Lowe's finding that Claimant would be able to perform work which allowed him to control the amount of sitting and stand he performed. (CCC 0500 citing CCC 0503). Unfortunately, Dr. Lowe is not a vocational expert and, as stated, did not render an vocational opinion. Therefore, Defendant's use of this statement as evidence that Plaintiff had flexibility to change positions at his job is unsupported. Further, the

substantial evidence of record from all the treatment providers, independent medical examination, and functional capacity evaluation render findings which clearly preclude Plaintiff from performing his past prior work.

Instead of addressing this evidence of record, Defendant chose to deny benefits based on its own assumption that Plaintiff perform the duties of his job since the job "allowed him the flexibility to change positions as needed." (CCC 0501). There is no evidence in the claims file which has documented that Plaintiff had such flexibility. Further, as his superiors at his employment have indicated, Plaintiff's condition precluded him from performing his past prior work. Common sense dictates that Plaintiff could not have flexibility to change positions during extensive travel by motor vehicle or airplane. The insurer's conduct in ignoring the vocational the evidence and inventing its own physical requirements for Plaintiff's past work is definitive evidence of abuse of discretion.

Defendant's reliance on the holding in *Gallagher v. Reliance Stand. Life Ins. Co.*, 305 F.3d 264 (4th Cir. 2002) is misguided. Unfortunately, the Defendant failed to undertake an appropriate job description as required under this holding by inventing "flexibility" in position options not endorsed by anyone at Plaintiff's work or contained in the job description of record.

Further, it was considered "not only high-handed, but also certainly evidence of a conflict" where a plan administrator rejected the conclusion of its own human resources manager that the participant was no longer capable of performing his former position. *Nord v. Black & Decker*, 296 F.3d 823 (9th Cir. 2002) (case granted *cert.* to the Supreme Court on other grounds). In this case, CNA ignored the statements of both the Plaintiff's Human Resources Director and company President who both noted that Claimant was unable to perform his position. These

undisputed facts cannot be overcome by the Defendant and demonstrate an abuse of discretion.

The failure of the Defendant to undertake an correct vocational analysis and its attempt to mischaracterize the vocational evidence are glaring examples of its abuse of discretion.

<u>Defendant improperly attempts to impugn the character of Claimant's independent examiners.</u>

The Defendant points to the case of *Cossio v. Life Ins. Co. Of N.A.*, 240 F. Supp.2d 388 (D.Md. 2002) in which, Martin Kranitz, Plaintiff's supporting vocational expert participated and had contested the transferable skills analysis performed by the insurer.  The Court in *Cossio* specifically ruled that the Plaintiff had not submitted objectively satisfactory evidence from her treating sources for Kranitz to justify his conclusions.  In this matter, there is ample evidence concerning Plaintiff's limitations from which Mr. Kranitz has based his conclusions and for which the Defendant has failed to contradict in any way despite extensive videosurveillance efforts. (0007 - 8, 0331 - 0335)  A WESTLAW search of the labor and employment database found only two other cases in which Mr. Kranitz testified, both of which he participated as an independent vocational expert in Social Security Administration hearings. A similar search concerning Drs. William Launder , Brian Kahan, and Clifford T. Solomon found only a few cases in which their notes were mentioned as part of worker's compensation, office of personnel management, and Social Security disability hearing decisions.  Searches concerning Drs. Macedo and Lowe rendered no results.  Therefore, Defendants accusations concerning Plaintiff's treating and independent examiners is false.  To this end, Plaintiff admits reference to evidence outside the record, but was given no alternative in light of Defendant's unjustified attempt to smear the reputations of the many practitioners who have attended to the Plaintiff, and by doings so, their clear concert of opinion supporting his disability.

CONCLUSION:

Plaintiff has presented overwhelming evidence of disability which has included medical, functional capacity, and vocational evidence serving to completely support his claim.  Rather than undertaking a full and fair review as part of its fiduciary duty to the Plaintiff, the Defendant chose to act as an adversary and deny the claim based on poorly supported evidence gathered by as part of a last ditch effort by employing a "medical review" company of poor repute.  Its reliance on the poorly supported medical review was made necessary due to its absolute failure to obtain videosurveillance evidence despite extensive efforts by which to characterize that Plaintiff is somehow not disabled.

Instead of acknowledging the weaknesses in its case, Defendant, through its counsel, has attempted to hide behind ERISA despite a large body of law which eviscerates its right to claim deferential review.  The case law consistently states that deferential review is lost or otherwise modified when the Defendant: (1) terminates benefits without a change in a claimant's condition; (2) makes an unreasonable decision based on selective review of the medical evidence; (3) fails to undertake a full and fair review of a claimant's vocation; (4) fails to take the favorable decision of the Social Security Administration into consideration; (5) fails to accord proper weight to treating and examining physician opinion; (6) relies on biased reporting from a often used nonexamining medical reviewer; and (7) while operating under a clear conflict of interest demonstrated by the admitted economic ties of the insurer and claim administrator and as demonstrated by the improper conduct undertaken during the claim review.

Rather than admit the deficiencies in the evidentiary record and case law, the Defendant has sought to engage in a dishonest course of conduct which has involved mischaracterization of

15

evidence and case law in its effort to defend this case by any means necessary.  The evidence presented clearly justifies that Plaintiff has been wrongfully denied disability benefits by the Defendant.  It is abundantly clear that the Defendant has completely abrogated its duty as a fiduciary in this matter and has denied disability benefits in order to serve its own economic interest.

Based on the grounds cited, Claimant respectfully requests that this Court rules in his favor and, in doing so, orders payment of all past and future long term disability payments with interest on all benefits wrongfully withheld as well as reinstatement of life insurance benefits including waiver of future payments.

Respectfully submitted,

_____
Scott B. Elkind #10810
Stephen F. Shea #4066
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
P: (301) 495-6665
F: (301) 565-5111
Attorneys for Plaintiff