IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NEAL S. SMITH,                                    )
                                                  )
            Plaintiff,                            )
                                                  )
v.                                                )   Civil Action No.:S 02-3049
                                                  )
CONTINENTAL CASUALTY COMPANY                      )
                                                  )
            Defendant.                            )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS UNDER ERISA § 502(g)

Plaintiff, by and through counsel, hereby sets forth his Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorneys Fees and Cost, and, in doing so, states the following:

**BASIS OF LITIGATION AND CLAIM FOR FEES:**

This suit was filed pursuant to §502(a)(1)(B)(29 U.S.C. §1132(a)(1)(B)) of the ERISA statute seeking an award of disability insurance benefits pursuant to an employee benefit plan. The parties engaged in extensive cross-motion briefing for summary judgement. On August 4, 2003, the Court issued a Memoranda Opinion and Order which found that defendant had abused its discretion when it denied plaintiff's disability benefits without properly considering the substantial evidence of record.

Pursuant to 29 U.S.C. §1132(g), the Court is authorized to award fees to the prevailing party in an action. The determination of what constitutes a reasonable fee is determined calculating a lodestar amount and by multiplying the number of hours reasonably spent on litigation times a reasonable hourly rate. The hourly rate is often determined by what is

1

customarily charged for similar work in the community performed by attorneys with similar

credentials and experience and other factors as more fully set forth below. *Johannsen v. District*

*No. 1 – Pacific Coast District*, 2001 WL 7709787 (D.Md.)

**STANDARD FOR DETERMINATION OF FEES:**

***QUESINBERRY FACTORS CONSIDERATION:***

In accordance with 29 U.S.C. 1132(g)(1), a party who prevails on a significant issue is

entitled to receive attorney's fees.  This statute has been interpreted by the Fourth Circuit to

include the following five factor test:

> (1) degree of opposing party's culpability or bad faith;
> (2) ability of opposing party to satisfy an award of attorney's fees;
> (3) whether an award of attorney's fees against the opposing party would
> deter other persons acting under similar circumstances;
> (4) whether the party requesting attorney's fees sought to benefit all
> participants and beneficiaries of an ERISA plan or to resolve a significant
> legal questions regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.3d 97;  *Austin v. Continental Casualty Co.*, 216 F.

Supp.2d 550, 561 (W.D.N.C. 2002) citing *Martin v. Blue Cross & Blue Shield of Virginia, Inc.*,

115 F.3d 1201, 1209-10 (4th Cir. 1997) citing *Denzler v. Questech, Inc.* 80 F.3d 97, 103 (4th Cir.

1996).

The five factor test is not meant to serve as a rigid test, but rather, provide general

guidelines for the Court.  The Fourth Circuit has recognized that some of the factors may be

inapplicable or inappropriate in any given case. *Rego v. Westavaco Corp.*, 2002 WL 1009599

(M.D.N.C.) citing from *Denzler*, *supra*, at 104; *Johannsen v. District No. 1 – Pacific Coast*

*District*, 2001 WL 77097 (D.Md.); *Metropolitan Life Ins. Co. v. Pettit*, 164 F.3d 857, 865 - 6,(4th

Cir. 1998).  Further, "The foremost principle...of attorneys' fees awards under ERISA is the

2

discretion the statute grants to the district court.  *Quesinberry*, *supra*, at 1029 citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266.

**(1) degree of opposing party's culpability or bad faith**

Plaintiff established the credibility of his contentions of pain through functional capacity testing, failed videotape surveillance by the Defendant, and medical evidence from his treatment providers and IME provider.

The Plaintiff established his inability to work from vocational expert reporting and as confirmed by the President of J.J. Haines (previous employer), as well as the favorable disability decision of the Social Security Administration (CCC 0244 - 50)

The Defendant, Continental Casualty Company, through its subsidiary CNA denied Plaintiff's claim for long term disability benefits basing its decision primarily on a last minute report solicited from Elite Physicians, a part of Network Medical Review (CCC 0284 - 87).  The nonexamining reviewer, Dr. Soriano, made a series of findings which acknowledged that Plaintiff was suffering from back pain, but went on to recite a series of naked assertions and concluding that Claimant's complaints were merely "self-reported" and "a diagnosis of a total impairment is not reasonable on the basis of Mr. Smith's self-reported complaints." (CCC 0285). The Court determined that Continental Casualty abused its discretion since it disregarded Plaintiff's allegations of pain without substantial evidence for its position. (Decision, p.11).  To this end, the Court pointed to recent scientific research and the pain assessment under the Social Security disability scheme. (Decision, p. 12).  In addressing the evidence of record in this case, the Court's decision states "Proof is proof." *Id*.  Plaintiff has contended throughout its pleadings that Defendant based its decision on a paucity of evidence by which to substantiate its denial.

The Defendant sought only to gainsay Plaintiff's well-documented allegations of pain, use of narcotic medications, functional capacity evaluation findings, reported inability to perform his past work, vocational assessments, and failed videosurveillance efforts.  In addressing the evidence of record,  this Court referred to the FCE performed by Dr. Macedo on 12/20/01 (CCC 0232 - 34) and Plaintiff's reports to the Defendant (CCC 0514, 0418, 0212), the statements of the President of Plaintiff's employer describing his inability to perform his past work (CCC 0516), in ability to acquire any videosurveillance demonstrating contrary evidence (CCC 0008, videotape), Claimant's use of narcotics (multiple references from patient records and PDR references), and the vocational report of Martin Kranitz, M.A. (CCC 0016).

   The Court sided with Plaintiff's contention that the answers provided by Dr. Lowe to Defendant's inquiry (CCC 0503)  concerning Plaintiff's ability to perform work which allowed control over sitting and standing were insufficient grounds on which to base a denial of benefits (CCC 0501, CCC 0212).  The Decision agreed with Plaintiff's contentions that additional notations made by Dr. Lowe in completing the inquiry served to undermine Defendant's contentions of nondisability due to clear equivocation of opinion (Decision, p.23 - 4).

   The Court further voiced full agreement with Plaintiff's contention that the opinions expressed by NMR Physician, Marc Soriano (CCC 0285), that Plaintiff's complaints of pain were disproportionate to his documented conditions was unsupported by substantial evidence. (Decision, p. 27).  The Court stated that the unsupported report procured from NMR was the sole basis for denial of Plaintiff's claim for long term disability.

   CNA further denied Plaintiff's claim for waiver of premium coverage under his employer's life insurance policy, stating that he was "not totally disabled from any occupation as

4

defined by the policy" (PLS 00006 - 7). Plaintiff contended that the review concerning waiver of premium coverage undertaken by Defendant was improper. (Plaintiff's complaint and pleadings).

 The Decision states that a different standard of disability than is present in the long term disability which included an "own occupation" of disability. (Decision, p.28)   CNA went on to write that this additional denial "is partnered with the long term disability claim" and because "Mr. Smith was not found to be disabled form his own occupation..., he is not considered to be disabled from any occupation." with no further discussion of any substantive grounds for the denial of waiver of premium coverage. (CCC 002).

        The standard of review in this claim urged by Plaintiff was abuse of discretion modified for the apparent conflict of interest due to the corporate relationship between the insurer, Continental Assurance Company and the plan administrator, Continental Casualty, both of which are subsidiaries of CNA Financial (policy no. SR-83126023, J.J. Haines ERISA plan, Def.'s Disclosure of Corporate Affiliations and Financial Interests; CCC 0572, 0593 - 94, 0615; CNA 000001).  Defendant contended that a strict, unfavorable abuse of discretion standard should be utilized contending that no conflict of interest existed. This Court ruled that the corporate relationship between the plan insurer and administrator created a conflict of interest since profits accrued to its corporate sibling in the amount of expenses avoided.  For this reason, deference to the denial decision was lessened "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Med. Servs.,* 3 F.3d 80, 87 (4tn Cir. 1993); *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 343 at n.2 (4th Cir. 2000).

***(2) ability of opposing party to satisfy an award of attorney's fees'***

Defendant Continental Casualty Company is a subsidiary of CNA Financial Corporation. The attached statement from its own website (Exhibit 1) states that CNA Financial is the fourth largest U.S. commercial lines insurer, insures 1 million business and professional policyholders, holds 1.3 million life and long-term care policyholders, insures 2.7 million employees in group disability plans  has $12.3Billion in revenues, and pays 15,000 employees.  This information clearly substantiates the Defendant's ability to pay attorney fees and costs in this claim.

***(3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances***

The payment of attorney fees and expenses along with publication of the case findings would serve a legal precedent by which to encourage other insurers to refrain from similar conduct as exhibited in this case.  Without the sanction of attorney fees, the insurer nothing to lose.  Even if the plaintiff succeeds and receives an award of benefits, the plaintiff was forced to acquire counsel for this purpose and stands at a net loss. Whereas, the insurer has suffered no loss due to its poor conduct which served to instigate the litigation.  In the ERISA scheme, there are no compensatory or punitive damages available to a plaintiff wrongfully denied benefits. The Plaintiff must seek to recover the wrongfully denied benefits at his/her own expense.  The size of this legal expense is formidable to a plaintiff who has been deprived of income due to disability with no income.   On the other hand, an insurer is capable of affording a defense to such claims without fear of not being able to pay its household bills.  In fact,  the legal fees paid by insurer serve as a deductible business expense.  Without requiring a defendant to pay attorney fees, there is nothing to prevent repeat occurrences of similar bad faith behavior by insurers as they seek to

improve their bottom line by accepting premiums without paying claims. Further, there is no incentive for a plaintiff attorney to take such cases if a plaintiff has only small benefit or is otherwise incapable of paying for representation on an hourly basis. Without an award of attorney fees, the potential for abuse by the insurer remains enormous.

***(4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal questions regarding ERISA itself***

This case serves to resolve significant legal questions. First, the decision sets forth a much-needed standard to be employed to for the purpose of pain determination in ERISA disability decisions. Although such a standard has existed in the Social Security context, further extension of a similar standard of review in the ERISA context serves to create a more objective method which will assist both plaintiffs and defendants in assessing the relative merits of future cases. This case also reinforces the concept that an insurer acting as a claims administrator is faced with a conflict of interest which will result in a less deferential standard of review. This line of reasoning will send a message to insurers to be more careful in making claims decisions given their inability to hide behind a less deferential standard of unmodified abuse of discretion review. The ruling in this matter serves to highlight the necessity of insurers to be fact sensitive in consideration of disability claims and not to rely on hired reviewers to gainsay medical evidence without any basis and claim that such unsubstantiated report serves as substantial evidence by which to deny disability claims. The resolution of these issues is a benefit to all ERISA plan participants, and, particularly, those afflicted with disability due to conditions resulting in pain.

**(5) the relative merits of the parties' positions.**

The decision issued in this matter clearly decided nearly every issue in Plaintiff's favor as fully set forth in step (1) above. For this reason, the relative merits of Plaintiff's cause of action were found to be credible while defeating all defenses advanced by the Defendant.

**ADDITIONAL SUPPORTING CASE AUTHORITY:**

This Court awarded enhanced attorney fees in *Johannsen v. District No. 1 – Pacific Coast District,* 2001 WL 77097 (D.Md.) utilizing the *Quisenberry* factors as set forth previously.

There is additional Fourth Circuit authority supporting plaintiff's position. Attorney fees were awarded in *O'Bryhim v. Reliance Standard Life Ins. Co.*, 188 F.3d 502 (4th Cir. 1999) (unpublished). Fees and costs in the amount of $114,163.00 were awarded by the district court which cited evidence of bad faith including requesting videosurveillance which demonstrated nothing concerning the claimant's condition.

The *O'Bryhim* case has been cited favorable in other matters including *Hines v. Unum Life Ins. Co. of America*, 110 F. Supp.2d 458 (W.D.Va. 2000) which found similar self-dealing resulting in an abuse of discretion where plaintiff was denied benefits based on video surveillance which defendant knew had little or no bearing on plaintiff's ability to function at her job. The *Hines* case also involved a claimant with primarily subjective complaints. The court in this matter concluded that:

> Unum swept aside all of this medical evidence in favor of nothing more than the above mentioned test results and a videotape. Any reasonable person would agree that this action reeks of partiality and Unum's attempt to hide behind the veil of administrative discretion cowers in the glare of the ire of this court. Accordingly, the court will review the record before it in a manner produced to offset an obvious effort by Unum to protect its self interest. Id. at 465

The *Hines* decision went on to cite bad faith activity including the poor way in which Unum administered the plan, "ready" jumping to use videosurveillance, to secretly videotape the claimant, failure to consider the medical evidence, and extrapolation a small change in restrictions.   Similar conduct was demonstrated by the Defendant in the instant case and justifies an award of attorney fees and expenses.

     *O'Bryhim* was also cited favorably in *Davidson v. Kemper National Services*  231, F. Supp.2d 446 (W.D.Va.).  The *Davidson* decision stated that a minimum of three of four factors (bad faith, ability to pay, potential for deterrence, and relative merits of parties' claims) needed to be met to award attorney fees.   In this matter, only a "sprinkling" of bad faith activity was found while all other factors were clearly met. The many instances of bad faith cited in the Decision in this case justify granting of attorney fees and expenses.

     Similar factor considerations have resulted in payment of attorney fees in ERISA based disability cases utilizing the *Quisenberry* factors including:   *Carroll v. Lucent Technologies, Inc. Long Term Disability Plan for Management Employees*, 2003 U.S. Dist. LEXIS 9789 (E.D. Pa); *Sprenkle v. Hartford Life Ins. Co.*, 84 F.Supp.2d 751 (N.D.WV 751); *Rego v. Westavco Corp.*, 20002 WL 10009599 (M.DN.C.);

### JOHNSON FACTORS CONSIDERATION:

     The *Johnson* factors were considered in the ERISA context in *Johannsen v. District No. 1 – Pacific Coast District*, 2001 WL 7709787 (D.Md.) citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 - 19 (5th Cir. 1974) [adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)  and are set forth as follows:

> (1) the time and labor required to litigate the suit;
> (2) the novelty and difficulty of he questions presented by the lawsuit;

(3) the skill required to perform the legal service;
(4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case;
(5) the customary fee for such services;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount in controversy involved and the results obtained;
(9) the experience, reputation, and ability of the attorney;
(10) the "undesirability" of the case;
(11) the nature and length of the attorney's professional relationship with the client;
(12) awards in similar cases.

*(1) the time and labor required to litigate the suit*

The time spent in this matter is set forth in the time record attached hereto.  The time required to litigate the matter is significant and substantial.

*(2) the novelty and difficulty of he questions presented by the lawsuit*

There were several novel and difficult questions placed before the court including: effect of corporate ownership interest in both plan and plan administrator and the effect on the standard of review due to conflict of interest, determination of fair pain standard to be employed in reviewing a disability denial, use of nonexamining medical reviewers to gainsay medical evidence of record supporting disability, use of selected portions of medical records during the claims review process, use of equivocal evidence elicited against a claimant, use and relative weight of videosurveillance evidence, denial of waiver of premium claim based on failure to review and improper standard of review employed, among others.

*(3) the skill required to perform the legal service*

The litigation involved research of many issues set forth in (2) above on a nationwide basis.  ERISA litigation requires comprehensive knowledge of statutory and common law.  The common law is rapidly evolving and requires extensive efforts to keep current.  Deciphering an

10

administrative record requires comprehensive knowledge of many medical, vocational, and insurance concepts in addition to a working knowledge of claim review techniques from other companies. Such knowledge is not available by any continuing legal educational courses and is only learned through practice and experience.

**(4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case**

Acceptance of ERISA-based disability cases is very risky and time-consuming. Most clients are impoverished as a result of benefit denials. Claims file review can take many hours with research on specific topics taking even longer. By accepting such cases, an advocate is devoting many hours to a single case. The hours recited in the litigation are only a small portion of the actual number of hours actually worked when an attorney is assisting in the administrative appeal of a claim. In this matter, two extensive administrative appeals were filed by counsel prior to commencement of litigation. Further, the constantly evolving nature of ERISA law requires that a practitioner engaged in this litigation constantly update his working knowledge. This constant updating of law on a national basis occupies a substantial amount of time which prevents a practitioner's ability to accept other types of cases and for which no billing opportunity is presented.

**(5) the customary fee for such services**

In *Johannsen v. District No. 1 – Pacific Coast District*, 2001 WL 7709787 (D.Md.), the prevailing party was awarded fees ranging from $240 - $275/hr which at that time exceeded the guideline limits set forth in the Rule of the United States District of Maryland, Appendix B**.** These guidelines are intended "solely to provide guidance" and set forth a current maximum hourly rate of $275.00 for a practitioner of 8 or more years experience. Claimant in this matter is

setting forth a request for the maximum $275.00/hr **at minimum** while also requesting an enhanced fee in the amount of $300.00/hr. (See Billing Summary)

   In support of this position, Plaintiff's counsel in his declaration sets forth his considerable experience in the field of ERISA based disability benefits, a field for which there are few practitioners and hardly any plaintiff practitioners.   This ERISA based disability benefits experience is accompanied by an extensive educational background, including a Bachelors in Biology and Masters in Forensic Sciences, which few attorneys possess.  Plaintiff's counsel further details the difficulty in providing representation to clients who have been wrongfully denied disability benefits.  Specifically, claimants are deliberately impoverished due to the deprivation of much-needed disability benefits.  This makes it extremely difficult for Plaintiffs to pay an attorney on an hourly basis to litigate a claim while also paying for household and life expenses without any continuing income.  Most plaintiffs only receive a relatively small monthly long term disability benefit, usually $1000.00 or less.  Given the small amount of back benefits available, contingency representation is not available in many cases. Further, the law of ERISA is extensive and evolving, requiring that most issues must be researched on a national basis.   This requires that a practitioner involved in this litigation constantly update his working knowledge of ERISA law in order to remain prepared for litigation in this arena.

   Plaintiff counsel's contentions are supported in the Declaration of Richard P. Neuworth, a practitioner admitted and practicing in this Court who also has involvement in ERISA litigation (attached hereto as Exhibit No. 2).

   As further support, Plaintiff has attached fee affidavits of several other plaintiff

practitioners in the ERISA disability benefits field which set forth billing rates as follows: Mark S. Shechter ($300/hr) (Exhibit No. 3), Robert Butterfield, ($300/hr) (Exhibit No. 3), Michael McKuin ($325/hr.)(Exhibit No. 4), Gary C. Nawa ($325.00) (Exhibit No. 5), Ronald Dean ($325 - 425/hr. (Exhibit No.6), Charles J. Fleishman ($350.00/hr.)(Exhibit No. 7), Jennifer Kurzon ($350.00)(Exhibit No. 8), Thomas M. Monson ($295.00/hr)(Exhibit No. 9), Susan Horner ($295/250.00/hr.)(Exhibit No. 10), Daniel Feinberg ($325 - 350.00/hr.) (Exhibit No. 11)

These attached declarations clearly establish Plaintiff counsel's entitlement to an enhanced fee in this matter.

**(6) whether the fee is fixed or contingent**

The fee charged was fixed as set forth in the attached Declaration. A reduced fee has been charged so far in order to assist the Plaintiff to afford representation while not receiving his long term disability income.

**(7) time limitations imposed by the client or the circumstances**

The Defendants in this matter requested several extensions which caused disruptions to Plaintiff's counsel scheduling.  The Plaintiff's counsel managed to respond to all pleadings without requesting extensions as done by the Defendant in order to minimize any delay to his client and minimize the economic deprivation the Plaintiff was experiencing.

**(8) the amount in controversy involved and the results obtained**

The Plaintiff's past benefits are valued at approximately $125,000.00 with future benefits and possible waiver or premium benefits which would bring the potential recovery to approximately $1Million should Plaintiff receive all benefits he is entitled to under the pertinent plan.  Without the finding by this Court, he would have received nothing.  In light of the decision

language, approval the waiver or premium benefits is expected.  In addition, the Plaintiff

recovered pre-judgment interest and is seeking attorney fees.  For this reason, Plaintiff should

recover all relief requested in the initial complaint.

**(9) the experience, reputation, and ability of the attorney**

The experience, reputation and ability of Plaintiff's counsel have been set forth in his

Declaration, the Declaration of Richard Neuworth (Exhibit No. 2) and the quality of work

reflected in the pleadings in this matter.  Plaintiff's attorney contends that his education,

experience, then nature of his practice, the skill and responsibility involved in this litigation, the

difficulty and complexity of the issues all support his request for attorney fees as set forth.

**(10) the "undesirability" of the case**

This case is undesirable from two standpoints. First, there are very few plaintiff counsel

who engage in ERISA litigation.  Therefore, the ability to find a skilled counsel in this area is

extremely limited.  Second, the case should be "undesirable" from the Court's perspective as

there is little justification for the denial of benefits by the Defendant which instigated litigation

in this matter.

**(11) the nature and length of the attorney's professional relationship with the client**

The client in this matter has been working with the undersigned counsel from the time of

his first disability denial by defendant.  During this time, Plaintiff was also represented

successfully before the Social Security Administration in his efforts to receive SSD benefits.

**(12) awards in similar cases**

In *Johannsen v. District No. 1 – Pacific Coast District*, 2001 WL 7709787 (D.Md.), the

prevailing party was awarded fees ranging from $240 - $275/hr which at that time exceeded the

14

guideline limits set forth in the Rule of the United States District of Maryland, Appendix B.

Fees requested by other ERISA plaintiff counsel set forth in Exhibits 3 - 11 were recognized and/or approved in Orders in the following actions: *Linda Attia v. Unum Life Ins. Co. of Am.*, United States District Court for the Central District of Florida, CV 01-02189 FMC (Exhibit 12) and *Hemenway v. Unum Life Ins. Co. of Am.*, United States District Court for the Southern District of Columbia, CV 01-CV-0289 W (AJB)(Exhibit No. 13).

WHEREFORE, the undersigned request that this Court award fees and costs payable in the following amounts as set forth in the attached Billing Summary:

Scott B. Elkind          Fees: Maximum Local Rule Rate = $ 24,365.00

Requested Enhanced Fee =  $ 26,580.00

Costs: $ 450.00

Pursuant to 28 U.S.C. §1746, the undersigned declares under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of August, 2003.


_____/s/_____
Scott B. Elkind

Scott B. Elkind
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
(301) 495 - 6665