UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NEAL S. SMITH | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No. WDQ 02-CV-3049 |
| CONTINENTAL CASUALTY COMPANY | * | |
|     Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

DEFENDANT CONTINENTAL CASUALTY COMPANY'S
OPPOSITION TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES

Defendant Continental Casualty Company ("Continental"), pursuant to Maryland Local Rules 105.1 and 109.2, and the Court's Orders of August 4 and 25, 2003, files this opposition to Plaintiff Neal Smith's petition for attorneys' fees and costs.

I.     PRELIMINARY STATEMENT

Mr. Smith claims entitlement to attorneys' fees pursuant to the five-factor test set forth in *Quesinberry v. Life Insurance Company of North America*, 987 F.2d 1017 (4th Cir. 1993). Rather than proving entitlement to fees under the test, Mr. Smith rests on his laurels, rehashing the Court's decision granting summary judgment and suggesting that the Court should award fees and costs principally because he prevailed in this action. Prevailing alone is not enough, however, and Mr. Smith's shortcomings are apparent.

First, Mr. Smith failed to identify any specific bad faith or culpable conduct of Continental that warrants such an award. In the absence of bad faith conduct by Continental, an award of fees and costs will not have a deterrent effect. Further, Mr. Smith did not seek to benefit other plan members and

advanced arguments to benefit only himself. In doing so, Mr. Smith did not prevail on all claims and advanced positions that lacked merit. Finally, assuming *arguendo* an award of fees and costs would be appropriate, Mr. Smith is not entitled to recover certain fees incurred in violation of the Local Rules. For these reasons, and those set forth below, the Court should deny Mr. Smith's petition for attorneys' fees and costs.

## II.   FACTUAL BACKGROUND

Mr. Smith submitted an application for long-term disability benefits on February 23, 2001. (*See* Summ. J. Mem. Op., August 4, 2003 ("Mem. Op.") at 2.) Mr. Smith also sought a waiver of the premium for life insurance coverage based upon his alleged disability. "The [disability] application indicated that Mr. Smith suffered from degenerative disk and joint disease of the lower spine." (*Id.*) Mr. Smith submitted employment information, physicians' notes and records of his treatment with the application. (*Id.*) On April 16, 2001, Continental denied Mr. Smith's claim for disability benefits after reviewing the application and conducting further investigation. (*Id.* at 3.)

Upon receiving Mr. Smith's request for reconsideration, Continental sought to conduct functional capacity testing to further its evaluation. (*Id.* at 3, 26 n.5.) Mr. Smith demanded full payment of benefits to date during the extended review process. (*Id.* at 3, 27-28 n.6.) Continental agreed to pay Mr. Smith, and, upon doing so, forwarded his file for evaluation by an independent peer review physician, Dr. M. Marc Soriano. (*Id.*) Continental denied the claim after receiving Dr. Soriano's report. (*Id.* at 3-4.) Again, Mr. Smith appealed Continental's decision and submitted additional information for review on appeal. (*Id.* at 4.) On May 2, 2002, Continental rendered its final denial after having reviewed Mr. Smith's disability claim for over fourteen months. (*Id.*)

Summary judgment briefing of the claim denial commenced on March 26, 2003. On August 4, 2003, the Court issued a Memorandum Opinion and Order granting Mr. Smith's motion for summary judgment with respect to his claim for long-term disability benefits. (Summ. J. Order, Aug. 4, 2003 ("Order") at 1.)

The Court, in addressing the applicable standard of review, stated that "Continental Casualty acted within the scope of its discretion when it denied Mr. Smith's claim for long-term disability benefits." (Mem. Op. at 7.) The Court, however, concluded that Continental's claims decision was unreasonable because "no more than a scintilla of evidence support[ed] the conclusion that Mr. Smith could perform the substantial and material duties of his job …." (*Id.* at 27.)

In explaining the basis for Continental's claims decision, the Court noted that, without objective medical proof to verify the intensity of the pain reported by Mr. Smith, Continental "simply disbelieved him." (*Id.* at 10-11.) The Court observed that Continental "had the discretion to do so. Any disability adjudicator must make 'credibility determinations – and therefore sometimes must make negative determinations – about allegations of pain.' Continental Casualty abused its discretion, however, if it discredited Mr. Smith without substantial evidence that he was exaggerating." (*Id.* at 11 (citation omitted).)

> Because a claimant need not present clinical or diagnostic evidence to support the severity of pain, a plan administrator cannot discount self-reports of disabling pain *solely* because the objective medical evidence does not fully support them. "'Excess pain' is, by definition, pain that is unsupported by objective medical findings."

(*Id.* at 13 (citations omitted).) Applying these principles to this case, the Court noted that "[a]ll the objective medical evidence indicates that Mr. Smith had a physical impairment that could cause pain." (*Id.* at 14.) The Court found that the record "contains ample evidence corroborating Mr. Smith's

3

subjective complaints," but acknowledged that "[a]lmost no such evidence substantiates the intensity of the pain that Mr. Smith said he was feeling." (*Id.* at 14, 15.)

The Court, in discussing Continental's reliance upon the opinions of Mr. Smith's physical therapist, Tom Simanski, and one of his physicians, Dr. Jon Lowe, stated that the relevant opinions "prove much less than Continental Casualty maintains." (*Id.* at 21.) With respect to Dr. Lowe, the Court noted that, "though his opinion may offer some counterweight to the abundant evidence of severe pain than the opinion of Mr. Simanski, it still registers insubstantially on the evidentiary scales." (*Id.* at 24.)

The Court concluded:

> The record contains no more than a scintilla of evidence supporting the conclusion that Mr. Smith could perform the material and substantial duties of his job …. Continental Casualty, therefore, abused its discretion in denying his benefits. Even if Continental Casualty were accorded the full deference due a plan administrator free of any conflict of interest, its decision was unreasonable.

(Mem. Op. at 27-28.)

Notably, the Court summarily rejected five arguments advanced by Mr. Smith. (*Id.* at 27-28, n. 6.) Specifically, the Court held that "well-settled law refute[d]" Mr. Smith's contentions that Continental (1) placed undue reliance upon the findings of Dr. Soriano, a nonexamining physician; (2) belittled or rejected the opinions of Mr. Smith's treating physicians; (3) chose between conflicting medical reports; and (4) gave insufficient consideration to the disability determination of the Social Security Administration. (*Id.*) The Court also rejected Mr. Smith's contention that Continental, when it found Mr. Smith not disabled and terminated benefits, reversed its prior decision. (*Id.*)

The Court further held that Continental's "decision to deny 'waiver of premium' coverage under the group life insurance policy, however, followed necessarily – and reasonably – upon the

4

determination (albeit erroneous) that Mr. Smith was 'not … disabled from *his own* occupation.'" … The relevant decision-maker, therefore, never considered all the record evidence. It had no need to." (*Id.* at 28-29 (emphasis in original).) Accordingly, the Court remanded Mr. Smith's waiver of premium claim for further review. (*Id.* at 29.)

III.   ARGUMENT

Title 29, section 1132(g)(1) provides, in pertinent part, that "[i]n any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In the Fourth Circuit, only prevailing parties are entitled to attorneys' fees in an ERISA action. *See Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997). However, there is no presumption that a party is entitled to attorneys' fees under section 1132(g)(1) solely by prevailing in the action. *See Quesinberry*, 987 F.2d at 1029-30; *see also Denzler v. Questac, Inc.*, 80 F.3d 97, 104 (4th Cir. 1996) (same); *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993) (same). An award of attorneys' fees rests within the court's discretion. *Id.*; *Quesinberry*, 97 F.2d at 1030 ("[t]here is no indication that Congress intended a mandatory fee shifting rule" in section 1132(g)(1)).[1]

The Fourth Circuit, as do most Circuits, requires the trial court to apply five factors in exercising its discretion. These are:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

---

[1] Subsection (g)(1) of section 1132 should be contrasted with subsection (g)(2), which requires the court to award reasonable attorneys, fees and costs to a fiduciary that obtains a judgment in favor of a plan.

5

(5) the relative merits of the parties' positions.

*Quesinberry*, 987 F.2d at 1029 (citing *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990)).

These factors are general guidelines only, and no one factor is decisive. *Quesinberry*, 987 F.2d at 1029. "The factors simply constitute the nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of the statute." *Custer*, 12 F.3d at 422. *See also American Med. Sec., Inc. v. Larsen*, 31 F. Supp. 2d 502, 505 (D. Md. 1998) ("[o]nly unusual circumstances justify such an award in an ERISA case"). "Under the relevant factors for shifting fees under § 1132(g)(1) … [a party] must demonstrate more than merely being the prevailing party on a single issue to demand entitlement to attorney's fees …." *Id.* at 423. "While Congress did provide for fee shifting at the district court's discretion in ERISA cases, the operation of a presumption in favor of fees undermines the 'American Rule' and should be employed only in extraordinary cases, such as civil rights litigation. … The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of [the district court's] discretion." *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 971 (8th Cir. 2002) (en banc), *cert. denied,* 123 S. Ct. 967 (2003). In fact, a "good faith denial may well better serve the remaining plan participants by keeping costs at a reasonable level. If the factors are to have any force and effect, a plan cannot presumptively be charged with attorney fees every time it is reversed in its decision to deny benefits." *Id.* at 973.

 A. The Record Does Not Support Any Bad Faith Conduct By Continental In Its Denial Of Mr. Smith's Claim

The first and third factors in determining whether attorneys' fees and costs should be awarded – the degree of opposing parties' culpability or bad faith, and whether an award would deter other persons acting under similar circumstances – are intertwined.

> [T]he two factors are closely related: The third factor – the deterrent effect of a fee award on other plan administrators – is one that is likely to have more significance in a case where the defendant is highly culpable than in a case such as this one. Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing.

*American Med.*, 31 F. Supp. 2d at 506 (citation omitted).

In the present case, Mr. Smith fails to identify any specific bad faith or culpable conduct on the part of Continental that supports an award of attorneys' fees. Instead, Mr. Smith simply rehashes the Court's opinion, and claims entitlement to attorneys' fees chiefly because the Court agreed with his position. (Pl.'s Mem. at 3-5.) Mr. Smith, for example, relies upon the Court's determination that Continental abused its discretion in denying his claim. Thus he emphasizes that the Court "sided with Plaintiff's contention" and "voiced full agreement with Plaintiff's contention" that Continental's decision was not supported by substantial evidence. (*Id.* at 4.) That the Court ruled in Mr. Smith's favor and against Continental is not sufficient grounds, of course, for awarding fees under ERISA. If that were true, then attorneys' fees would be awarded as a matter of course every time the Court determined a claims decision was unsupported by substantial evidence. *See Quesinberry*, 97 F.2d at 1030 ("[t]here is no indication that Congress intended a mandatory fee shifting rule" in section 1132(g)(1)").

Mr. Smith similarly relies upon the Court's standard of review analysis. (Pl.'s Mem. at 5.) In citing the analysis, Mr. Smith suggests that the Court's decision to afford Continental less deference based on a perceived conflict of interest is somehow evidence of bad faith conduct by Continental. The standard of review applicable to Continental's decision (a determination based on Continental's corporate structure and relationship with CNA) has no connection to the determination of whether Continental engaged in bad faith conduct.

Mr. Smith also argues that Continental's denial of his claim for waiver of premium was "improper", and implies that the denial of this claim is grounds for an award of attorneys' fees. (Pl.'s Mem. at 4-5.) The Court did not remotely suggest any wrongdoing by Continental in its denial of the claim for waiver of premium. To the contrary, the Court held that Continental's decision "followed necessarily – and reasonably – upon the determination (albeit erroneous) that Mr. Smith was 'not … disabled from *his own* occupation.' … The relevant decision-maker, therefore, never considered all the record evidence. It had no need to." (Mem. Op. at 28-29 (emphasis in original).) The Court remanded the claim for additional consideration.

Mr. Smith further mischaracterizes the Court's opinion. The Court did not "state[] that the unsupported report procured from NMR[, Network Medical Review,] was the sole basis for denial of Plaintiff's claim for long term disability", nor did the Court determine that Continental "bas[ed] its decision primarily on a *last minute report* solicited from Elite Physicians." (Pl.'s Mem. at 3, 4 (emphasis added).) To the contrary, the Court recognized Continental's reliance on the opinions of Dr. Soriano, of the Network Medical Review (*see, e.g.,* Mem. Op. at 3, 27), Dr. Solomon (*id.* at 27), Dr. Lowe (*id.* at 23), and Mr. Simanski, the physical therapist (*id.* at 21-22).

Mr. Smith also suggests Continental engaged in bad faith conduct by identifying the "failed videotape surveillance by the Defendant." (Pl.'s Mem. at 3.) Rather than deeming the surveillance an act of bad faith, the Court concluded that the videotape "proves nothing" and "disproves nothing." (Mem. Op. at 18.)

Mr. Smith's argument on the third *Quesinberry* factor - deterrence – is similar. (Pl.'s Mem. at 6-7). Mr. Smith fails to identify any specific act that the Court designated as "bad faith" or "culpable conduct" that should be deterred. Instead, Mr. Smith turns the analysis away from Continental by

asserting that, "there is no incentive for a plaintiff['s] attorney to take such cases if a plaintiff has only small benefit or is otherwise incapable of paying for representation on an hourly basis." (*Id.* at 7.) There is no "incentive" factor in the *Quesinberry* test, nor is it clear how deterring an insurance company from misconduct would subsequently create an incentive for a plaintiff's attorney. The question of a plaintiff's attorney's incentive is irrelevant.

In any event, an award of attorneys' fees and costs is not necessary to deter Continental from conducting arbitrary reviews of claims. A judicial determination of a claims handling error, alone, damages an insurer's reputation and has a deterrent effect. *See, e.g., Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 295 n.8 (5th Cir. 1999) (discussing the damage to an insurer's reputation arising from denying meritorious claims). Continental, therefore, has a strong incentive to properly review claims in the first instance. The review process in this case, however, was not marked by unfairness or procedural irregularities, and Continental did not obstruct Mr. Smith's numerous efforts to provide additional information at the appropriate time. Indeed, Mr. Smith's application for disability benefits received two full administrative reviews by Continental's claims review staff over a period of fourteen months.

    B.    Mr. Smith Did Not Seek To Benefit Other Plan Members Or Seek To Resolve Significant Legal Questions Regarding ERISA Itself

Mr. Smith's complaint initiated a typical benefits action under 29 U.S.C. § 1132(a)(1)(B). The allegations and relief sought in the complaint are specific to Mr. Smith's claim under the plan, and the final disposition of the action does not benefit the plan as a whole or any participant or beneficiary other than Mr. Smith. Indeed, Mr. Smith acknowledged that "[n]o claim is alleged on behalf of members of the plan as a whole as part of a 29 U.S.C. § 1132 (a)(2) action." (Compl. at ¶ 22.)

In his summary judgment brief, Mr. Smith advanced case-specific arguments with the goal of obtaining long-term disability benefits and premium-free life insurance for himself. Rather than seeking

to resolve novel legal questions, Mr. Smith sought to rely upon established legal principles from a variety of jurisdictions to advance his own cause. The Court, however, rejected at least four of Mr. Smith's arguments on the ground that the contentions, in reality, were refuted by well-settled law. (Mem. Op. at 27-28 n.6.) The Court, therefore, recognized that Mr. Smith's arguments were not novel or unique.

Mr. Smith observes that "the [Court's] decision sets forth a much-needed standard to be employed for the purpose of pain determination in ERISA disability decisions." (Pl.'s Mem. at 7.) Although the Court, on its own initiative, has issued a decision in this action that strikes new ground, the Court's conduct is not under scrutiny here. The relevant test under *Quesinberry* is "whether *the parties requesting attorneys' fees* sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself[.]" *Quesinberry*, 987 F.2d at 1029. Thus, the novelty of the Court's analysis does not lead to the conclusion that Mr. Smith is entitled to attorneys' fees. As the Court of Appeals for the Seventh Circuit opined in similar circumstances:

> The plaintiffs argue that the novelty of the question should work to their benefit and not their harm. The trial court found that, although the plaintiffs had prevailed on a novel claim, Canteen had not violated [the relevant statute] in bad faith. In that case, we cannot say that it is wrong to use the novelty of an argument to keep an unblamable defendant from having to pay the attorney fees of the plaintiff who succeeded in making the argument law.

*Davidson v. Canteen Corp.*, 957 F.2d 1404, 1409-10 (7th Cir. 1992).

    C.    Mr. Smith Did Not Succeed On All Claims And Advanced Arguments Lacking In Merit

In addressing the fifth factor (the relative merits of the parties' positions), the Court should consider that, although Mr. Smith prevailed in the action, he failed to persuade the Court that he is entitled to all the benefits he sought. At the outset of the case, the Court dismissed Mr. Smith's breach

of fiduciary duty claim.  (*See* Mem. & Order, Dec. 10, 2002.)  Additionally, the Court did not grant summary judgment in Mr. Smith's favor on his claim for waiver of premium.  (Mem. Op. at 28-29.)  Further, the Court rejected several arguments advanced by Mr. Smith because they simply lacked merit and, indeed, were refuted by "well-settled law."  (*Id.* at 27-28 n.6)

Under these circumstances, Mr. Smith's fee, if awarded, should be reduced to reflect the unsuccessful claims.  The decision in *Christian v. Dupont-Waynesboro Health Care Coverage Plan*, 12 F. Supp. 2d 535 (W.D. Va. 1998), is instructive.  In *Christian*, the plaintiff filed a two-count complaint, charging a violation of ERISA for failure to issue a notice of denial of benefits that complied with 29 U.S.C. § 1133 (count one) and seeking a declaratory judgment that certain medical treatment was medically necessary (count two).  The court held that the notice of denial of benefits was legally deficient, but remanded the matter to the plan administrator to correct the procedural deficiencies and address the plaintiff's request for benefits.

The court held that the plaintiff was a prevailing party, but only because she had prevailed with respect to count one.  In fact, the court concluded that, because the plaintiff was not successful on both claims, she would only be awarded one-half of her attorneys' fees.  Implicit in the court's holding is that the plaintiff was not a prevailing party with respect to count two because the matter was remanded to the plan administrator, and, for that reason, she was not entitled to an award of fees with respect to that claim.

The same result should obtain in the case *sub judice*.  At the outset of the case, Mr. Smith sought to pursue claims for breach of fiduciary duty, wrongful denial of disability benefits, and wrongful denial of premium-free life insurance coverage.  The breach of fiduciary claim duty did not survive a motion to dismiss.  As with the plaintiff in *Christian v. Dupont-Waynesboro*, moreover, Mr. Smith prevailed with

11

respect to only one of the two claims that reached summary judgment briefing. For this reason, the Court should reduce any award of attorneys' fees and costs by as much as one-half. *Christian v. Dupont-Waynesboro*, 12 F. Supp. 2d at 538; *see also Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 990 F. Supp. 1039, 1043 (N.D. Ill. 1998) (awarding one-third of attorneys' fees because plaintiff achieved one-third of the relief she requested), *vacated on other grounds*, 195 F.3d 975 (7th Cir. 1999); *Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1139-40 (E.D. Mo. 1998) (although preempted breach of contract claims shared some facts with ERISA claims, defendants were not required to pay plaintiffs' attorneys for the time plaintiff spent bringing and litigating those claims); *Stanton v. Larry Fowler Trucking, Inc.*, 863 F. Supp. 908, 912 (E.D. Ark. 1994) ("Lack of success has supported reductions in fee awards of as much as sixty-seven percent."). *But see Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); *Grooman v. Northwestern Mut. Life Ins. Co.*, No. Civ. A. WMN-01-521, 2003 WL 403349, *2 (D. Md. Jan. 9, 2003) ("[C]ourts have allowed for the award of fees for work related to unsuccessful claims where those claims are 'inextricably intertwined' with successful claims, … typically in situations where a party has prevailed on one theory, failed on another, but nonetheless, achieved the ultimate outcome that it sought.")

    D.    Assuming *Arguendo* Mr. Smith Is Entitled To An Award Of Attorneys' Fees, The Fees Sought By Mr. Smith Should Be Reduced

Aside from the fact that Mr. Smith failed to prevail on all of his claims, there are additional reasons to reduce any potential fee award. First, Mr. Smith seeks attorneys' fees for work that violated

the Local Rules. Between May 28 and June 2, 2003, Mr. Smith spent up to twelve hours filing a surreply in violation of Maryland Local Rule 105.2. (*See* Pl.'s Billing Summary at 2-3; *see also* Paper no. 26 (surreply).) When the Court struck the surreply, (*see* Paperless Order, May 30, 2003), Mr. Smith filed a motion for reconsideration of the Court's ruling. (*See* Paper no. 29.) The Court denied Mr. Smith's motion for reconsideration on the day it was filed. (*See* Paperless Order, June 2, 2003.) If fees are awarded, then Continental should not be required to pay for fees associated with the filing of the surreply or the motion for reconsideration.[2]

Second, Mr. Smith claims an enhanced hourly fee for his services. (Pl.'s Billing Summary at 3.) "Grants of an enhancement are both discretionary and rare, and the applicant bears the burden of proof of an exceptional result." *Johanssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 181 (4th Cir. 2002) (citations omitted). Mr. Smith has not shown that he achieved an "exceptional result." Mr. Smith has obtained the benefits provided for in the group disability policy and nothing more.

Further, Mr. Smith supports his request for an enhanced fee with the affidavits of nine California attorneys submitted in separate California cases. (*See* Pl.'s Exs. 3-11.) Those affidavits can have little relevance to this case, however, because the reasonableness of attorneys' fees is analyzed in relation to the "prevailing market rates in the relevant community …." *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984). California is not the "relevant community" with respect to legal fees in Maryland. Thus, Mr. Smith cannot meet his burden of substantiating an enhanced Maryland fee by proffering affidavits of California attorneys.

---

[2] The exact amount of time Mr. Smith spent on his surreply is unclear, however, because Mr. Smith, on any given day, failed to provide "a detailed description of the work performed broken down by hours or fractions thereof expended on *each* task," as required by the Local Rule 109.2(b) (emphasis added). (*See* Pl.'s Billing Summary.)

Finally, Mr. Smith has claimed 21 hours for the preparation of his fee petition, and has attempted to reserve his right to claim even more time. (Pl.'s Billing Summary at 3.) Thus, almost 25% of Mr. Smith's overall time is devoted to preparing the fee petition. Even if he would be entitled to such attorneys' fees for the preparation of a fee petition, the preparation of a fee petition is not an "exceptional" circumstance calling for an enhanced fee.

### IV.   CONCLUSION

For the foregoing reasons, Continental Casualty Company respectfully requests that the Court deny Neal Smith's petition for attorneys' fees or grant a reduced fee award.

Respectfully submitted,

_____/s/_____
Bryan D. Bolton
Federal Bar No. 02112
Hisham M. Amin
Federal Bar No. 15570

Funk & Bolton, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, Maryland  21201-3111
410.659.7700 (telephone)
410.659.7773 (facsimile)

Attorneys for Continental Casualty Company

Dated: August 29, 2003
20024.014:6 6610v.3