IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NEAL S. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.:WDQ 02-CV-3049 |
| | ) |
| CONTINENTAL CASUALTY COMPANY | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
PETITION FOR ATTORNEYS FEES AND COSTS UNDER ERISA § 502(g)**

Plaintiff by and through counsel, pursuant to Maryland Local Rules 105.1 and 109.2, and this Court's Orders dated 8/4/03 and 8/25/03, files the following reply to Defendant's Opposition to Plaintiff's Petition for Attorneys Fees and Costs.

**PRELIMINARY FACTS**:

Plaintiff in its Petition for Attorneys Fees and Costs under ERISA § 502(g) included a two fold argument including citation to the five factors enumerated in *Quesinberry v. Life Insur. Comp. Of N. Am.*, 987 F.2d 1017 (4th Cir. 1993) and the eleven *Johnson* factors cited in *Johannsen v. District No. 1 – Pacific Coast District*, 2001 WL 7709787 (D.Md.).  Defendant has sought to specifically contest four of the five *Quesinberry* factors and by reference only two of the *Johnson* factors.   For this reason, all other factors argued by Plaintiff should be found in his favor due to the absence of any contention to the contrary by the Defendant.

**DEFENDANT FAILS TO NEGATE ITS BAD FAITH ACTS AND COMMITS FURTHER
BAD FAITH CONDUCT IN ADVANCING ITS *QUESINBERRY* ARGUMENTS**.

    A.  <u>Defendant demonstrates additional bad faith conduct in its Factual Background</u>

1

recital.

On Page 2 of its opposition memorandum, the Defendant alleges that it "rendered its denial after having reviewed Mr. Smith's disability claim for over fourteen months." Taking this statement as alleged, this conduct was violative of 29 C.F.R. §2560.503 - 1(f)(1) which, prior to the 2000 amendments, only permitted 60 days for review of a claim unless special circumstances were demonstrated. Defendant never made such a showing of special circumstances at any time during the claim review period. Even if such special circumstances were shown, an additional 60 day extension is all that is permitted. For these reasons, Defendant took an additional ten months beyond the statutory guidelines to manufacture a denial of this claim. This constitutes bad faith conduct at the outset of the claim and clearly illustrates the extended effort Defendant undertook to procure a denial Plaintiff's benefits. Defendant's continued bad faith conduct is only reinforced by asserting its own bad faith activity as support for Defendant's position of having not committed bad faith acts.

B. Defendant's arguments concerning the first and third *Quesinberry* factors are mertiless.

Defendant accuses Plaintiff of simply "rehashing" the Court's opinion as support for attorneys fees "because the Court agreed with his position." This allegation is absurd. If the Court did not agree with the Plaintiff's position, he could not petition for fees in the first place. It is the substance of the Court's agreement as cited point by point by Plaintiff reciting the bad faith acts committed by Defendant which must be addressed rather than this Court's general agreement with Plaintiff's position.

The standard of review argument made by Defendant in its briefing is equally unpersuasive. As part of his briefing, Plaintiff cited to the fact that the insurer and third party

2

administrator were both subsidiaries of CNA Financial. This was admitted by the Defendant in

its Disclosure of Corporate Affiliation. Further, Plaintiff set forth a line of uncontradicted cases

in its Summary Judgement briefing which found that this relationship constituted a conflict of

interest. Rather than admitting that the standard of review would need to be modified, the

Defendant argued for strict arbitrary and capricious review. This argument was made in bad

faith given the law and facts known. The Defendant's contention in spite of its knowledge that it

had not legal or factual support for doing so serves as strong evidence of bad faith activity in this

matter.

Further, the fact that Defendant feels compelled to make the same unsupported argument

time and again concerning its obvious conflict of interest constitutes far more than a mere

mishandling of a claim as Defendant contests. This demonstrates a knowing decision to continue

arguing a well-founded contradictory legal precedent in hope of reversing it in another judicial

circuit. This conduct demonstrates the insurer's willingness to fight its cause at any expense

rather than admitting the weakness of its bad faith posturing.

Defendant goes on to argue that the denial of the waiver of premium was not bad faith

conduct. This is rather surprising since the denial was based on the wrong standard of review as

set forth in the plan of insurance. This was bad faith conduct. Even more surprising is that this

policy was never produced to the Plaintiff despite his counsel's 29 C.F.R.. § 2560.502-1(g) et

seq. request for this on 6/14/02 (PLS 000111). Plaintiff did not receive this information until

litigation ensued. This is violative of the constituting another act of bad faith.[1] Instead of

undertaking any review, the Defendant merely stated that it was employing its denial of long

---

[1] In fact, under §502(c), Plaintiff would be entitled to court ordered sanctions of up to $110/day for the Defendant's failure to produce the requested "pertinent documents" including the subject policy of insurance.

term disability for the purpose of denying the waiver of premium claim.  This constitutes another

bad faith act. The Court's order remanding this claim for proper consideration highlights agreed

with Plaintiff's position that an unfair and incomplete claims review had been undertaken. This

constitutes a positive result for the Plaintiff who would otherwise would never receive proper

consideration of his waiver of premium claim.

Plaintiff is further accused of mischaracterizing this Court's opinion concerning its near

complete reliance upon the report from Network Medical Review.  It was this Court in its

opinion which stated that

> The record contains no more than a scintilla of evidence supporting the
> conclusion that Mr. Smith could perform the material and substantial
> duties of his job...

This  "mischaracterization" argument fails to address the substance of Plaintiff's point by point

discussion reciting all the evidence Defendant failed to consider as part of its claim review.

These failures by Defendant amply demonstrate its bad faith conduct in this case.  The fallacious

argument advanced in the Defendant's Opposition again serves as another example of its further

and continuing bad faith conduct in this case.

Defendant makes another unfounded accusation concerning the substance of Plaintiff's

bad faith argument concerning Defendant' undertaking videosurveillance. The act of undertaking

videosurveillance in light of the overwhelming medical support was merely bad judgement by

the insurer.  Its failure to review the results and appreciate the significance of the stunning failure

to obtain any evidence demonstrative of Plaintiff nondisability as evidenced by

videosurveillance footage is where the bad faith component is evident.

Defendant goes on to mischaracterize Plaintiff's third *Quesinberry* factor.  The Plaintiff

4

clearly argues that the payment of attorney fees and expenses along with publication of the case findings would serve a legal precedent by which to encourage other insurers to refrain from similar conduct as exhibited in this case. Without the sanction of attorney fees, the insurer has nothing to lose. Even if the plaintiff succeeds and receives an award of benefits, the plaintiff was forced to acquire counsel for this purpose and stands at a net loss. Whereas, the insurer has suffered no loss due to its poor conduct which served to instigate the litigation, especially where it outright discourages claimant's from appealing wrongful denials or in reliance upon the known inability of claimant's to obtain legal counsel for assistance. Even if a claimant can obtain counsel, the size of the legal expense to the Plaintiff is formidable in comparison to Defendant's obvious ability to bear such expense (and a deductible one at that). Defendant's argument fails to address these facts and is of little consequence.

The final argument that the Defendant did not obstruct Mr. Smith's appeal efforts is insulting. The Defendant dragged its feet and took many months beyond its statutory deadline in its "review" of his claim. Defendant ignored voluminous medical evidence supporting Plaintiff's disability and decided to undertake last minute videosurveillance and high cost expedited "medical review" to create grounds for denial. This conduct is teeming with bad faith as it demonstrates that the Defendant sought to deny Plaintiff's claim by any means necessary and had no intention of undertaking a full and fair review as required by law. Then, when litigation ensued, Defendant asked for extension after extension in its efforts to prolong litigation and prevent the Plaintiff from receiving benefits for as long as possible.

 C.  <u>Defendant's contention that Mr. Smith did not seek to benefit other Plain members is an obvious bad faith attempt to mislead this Court.</u>

Plaintiff's complaint set forth a claim for improper denial of individual benefits under 29

5

U.S.C. §132(a)(1)(B).  As part of its pleading, Plaintiff stated that the Defendant had failed in its fiduciary duty to consider Plaintiff's disability and waiver of premium claims fully and fairly as required.  As an individual who has been denied benefits based on a single claim, the Plaintiff had no grounds to make a claim on behalf of all plan participants under 29 U.S.C. § 1132(a)(2). A 1132(a) claim is made on behalf of all participants only allows for recovery to the plan as a whole and would not address the benefits denial to the Plaintiff as an individual.  Although this was expressly stated in Plaintiff's complaint, the Defendant attempted to mischaraterize the statement and filed a Motion for Dismiss which was summarily denied.

The fact that Mr. Smith did not make an 1132(a)(2) claim does not negate the fact that his success in this litigation does assist other plan beneficiaries.  By obtaining a favorable result, the Defendant is now faced with a legal precedent which will serve as an ongoing instruction to fully and fairly consider other claims brought by other plan participants, especially those with well-supported allegations of pain.  By requiring the insurer to undertake a full and fair evaluation of pain, many plan beneficiaries will, hopefully, be approved for benefits and avoid lengthy and expensive litigation as Mr. Smith had to endure (and continues to endure due to the appeal filed on this case on 9/4/03).

Plaintiff's arguments leading to the enunciation of such a pain standard were both **novel and necessary**.  The Defendant's failure to appreciate these arguments and the supporting facts is based on its economic self interest to foster denial of claims which insure to its own economic benefit rather than being compelled to fully and fairly review claims for its own beneficiaries.

The fact that the Defendant has attempted to utilize its own specious Motion to Dismiss which was denied by this Court as support for its argument is misleading and disingenuous. At

6

no time has Plaintiff brought an 1132(a)(2) fiduciary duty claim. Rather, Plaintiff pointed out in

a long recitation of law contained in its Opposition to the dismissal motion briefing that

Defendant violated its fiduciary duty to the Plaintiff **only** as clearly alleged in his Complaint and

for which relief by this Court was fully granted. This attempt to mislead this Court by the

Defendant in alleging dismissal of a claim never brought by the Plaintiff serves to highlight the

lengths to which the Defendant will perpetuate its bad faith conduct.

### DEFENDANT'S LIMITED ARGUMENTS CONCERNING THE *JOHNSON* FACTORS ARE BASELESS.

Plaintiff was given ten days to file his Petition for attorney fees. In that time, he was able

to gather multiple declarations from attorneys across the country in other similar cases. These

cases employed similar standards for attorney fee determination as presented in this case. This

was an enormous undertaking which was necessary to substantiate Plaintiff's arguments for

entitlement to an attorney fee as well as an enhanced fee. In further support of this claim,

Plaintiff submits the Declarations of two other respected ERISA plaintiff attorneys, David A.

Bryant from Chicago, Illinois, and Benjamin W.Glass from Alexandria, Virginia.[2] These

declarations were provided after Plaintiff's initial Petition since many practitioners were on

vacation during the short time given to Plaintiff to acquire the necessary supporting

documentation. As it stands, Plaintiff produced an substantial exhibit packet containing multiple

affidavits from practitioners in California whose fees were subject to similar legal tests. The

plaintiff ERISA community is very small and obtaining the number of declarations submitted

---

[2] The fact that more plaintiff ERISA practitioners are present in California is due to the presence of more favorable bad faith law which can result in sizeable punitive damage awards in private long term disability cases litigated. The absence of this more advantageous law (and inability to garner large contingency fees) consequently has dissuaded plaintiff practitioners from learning the extensive law of ERISA.

was difficult.  Despite the criticism by Defendant, it is extremely noteworthy that no argument

was advanced concerning the qualifications of Plaintiff's counsel set forth in his Declaration or

the supporting Declaration by Richard Neuworth, one of the very few ERISA plaintiff

practitioners in this jurisdiction.  For this reason, all statements made therein should be given full

force and effect and justify an enhanced fee in this case.

The preparation of the fee petition is deemed part of the fee obtained. Local Rules

Appendix B 1(b)(x).  Defendant has failed to state any governing law to the contrary and his

position is clearly belied by the statute.  This conduct is again evidence of bad faith conduct.

It is clear that the Defendant will make any argument, however unsupported or fallacious,

to support its position.  This includes its criticism of the hours expended and the billing tasks

listed by the Plaintiff are wholly without merit.  Plaintiff can only hope that this Court will

recognize the simple adage we were all taught in our youth: "People living in glass houses

should not throw stones" (paraphrase, George Herbert, *Jacula Prudentum* at 196) .   For this

reason, the Plaintiff respectfully requests that this Court order the Defendant to produce its

counsel's billing record to the Defendant for comparison with the Billing Summary produced by

Plaintiff.  The Defendant was billed for the services of multiple associates and support personnel

employed to assist the name partner of its counsel has resulted in an excessive billing amount for

its services which dwarfs that requested by the Plaintiff.  The Plaintiff's decision not to list each

and every minute activity such as phone calls, facsimiles and actual posting of articles for

mailing serves to reduce its charges and does not serve as a ground for failure to list all tasks. [3]

If all minute tasks were recorded, it would result in more time being devoted to billing of tasks

---

[3]Every task billed for has been listed and has been set forth in proper detail as required under law and as
set forth in similar cases in this court which were used as an example by the Plaintiff.

8

rather than performance of the same.  If the Defendant feels confident enough to criticize in this regard, it should be prepared to produce its own records to demonstrate how reasonable the billing practices of its hired counsel are.

CONCLUSION:

The Defendant has raised many groundless arguments as part of its Opposition to Plaintiff's Petition for attorney fees and costs.  The failure to address most of Plaintiff's arguments and insistence of advancing additional bad faith arguments serve to underscore the fact that the Defendant is determined to continue in its bad faith conduct despite all facts and law to the contrary which have been substantiated by yet another legal precedent against it..  On the other hand, Plaintiff has set forth many definitive instances of bad faith conduct which could be prevented in the future by the assessment of attorney fees as requested.  Such an assessment will make insurers take notice of their practices as their liability for bad faith denial practices will result in even greater costs.  The avoidance of paying costs by undertaking fair claims review practices will serve to reduce the costs to plan participants by keeping legal costs under control as well as insuring a fair decision process for disabled participants.

Wherefore, Plaintiff requests that he be paid attorney fees and costs as enumerated in the Amended Billing Summary filed with this Reply .  Plaintiff further requests that this Court order the Defendant to produce the billing from its counsel  for comparison as its counsel has advance unfair and unsupported arguments concerning Plaintiff's billing in this matter.

Respectfully submitted,

_____/s/_____
Scott B. Elkind
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
(301) 495 - 6665