```
         IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                *
NEAL S. SMITH,                  *

     Plaintiff,                 *

v.                              *    CIVIL NO.: WDQ-02-3049

CONTINENTAL CASUALTY COMPANY    *

                                *
     Defendant.
*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

BACKGROUND

The Plaintiff, Neal Smith ("Mr. Smith"), sued the Defendant, Continental Casualty Company ("Continental"), for wrongful denial of his claim for long-term disability benefits, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").[1] In a Memorandum Opinion dated August 4, 2003, the Court granted in part Mr. Smith's motion for summary judgment. *Smith v. Cont'l Cas. Co.*, 2003 U.S. Dist. LEXIS 13749 (D. Md. 2003). The Court concluded that Continental abused its discretion when it discredited Mr. Smith's self-reports of pain without substantial evidence that he was exaggerating, and denied his claim for disability benefits. *Smith*, 2003 U.S. Dist. LEXIS 13749 at *12.

Because the Court determined that Continental abused its discretion when it denied Mr. Smith's claim, Mr. Smith seeks an

---

[1] 29 U.S.C. §§ 1001 *et seq.* (2003).

award of attorney's fees and costs, authorized by ERISA § 1132(g).  Pl.'s Mot. for Att'ys Fees & Costs 2.  Section 1132(g)(1) provides "[i]n any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1) (2003).

Continental argues that Mr. Smith is not entitled to recover attorney's fees, or that if fees are awarded, they should be less than the amount Mr. Smith requested.  *See generally*, Def.'s Opp'n to Pl.'s Mot. for Att'ys Fees & Costs.  In replying to this argument, Mr. Smith asked the Court to require Continental to submit its billing records for this case into evidence, in order to demonstrate that the fees charged by Mr. Smith's attorney are reasonable in comparison.  Pl.'s Reply 8.  Continental's counsel then filed a motion for leave to file a surreply so that it could respond to Mr. Smith's request.  Def.'s Mot. for Leave to File Surreply 2.  Pending are Mr. Smith's motion for attorney's fees and Continental's motion for leave to file a surreply.


I.   Whether to Award Attorney's Fees
     A.   The Five Factor Test
     In *Reinking v. Philadelphia American Life Insurance*

*Company*,[2] the Fourth Circuit adopted a five factor test for the District Court to use in determining whether to grant a request for attorneys' fees. The five factors are:

1. degree of opposing parties' culpability or bad faith;
2. ability of opposing parties to satisfy an award of attorneys' fees;
3. whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
4. whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
5. the relative merits of the parties' positions.

*Id.* at 1218 (*citing Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

The factors do not constitute a rigid test, but "rather provide[] general guidelines for the district court in determining whether to grant a request for attorneys' fees." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (*citing Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258 (1st Cir. 1986)). No one factor is necessarily determinative, and some may not apply in a particular case, but together they are the "nuclei of concerns that a court should address" when applying ERISA § 1132(g). *Id.* (*citing Bowen*, 624 F.2d at 1266).

B.  Applying the Five Factors

Mr. Smith contends that Continental showed bad faith in

---

[2] 910 F.2d 1210, 1217-18 (4th Cir. 1990).

denying his claims for disability benefits by ignoring his self-reports of intolerable pain, recommendations from his treating physicians that he refrain from working, results of a functional capacity evaluation indicating that he was not capable of performing even sedentary work, and the Social Security Administration's determination that he was disabled.  Pl.'s Mot. for Att'ys Fees & Costs 3-4.  Continental failed to properly review Mr. Smith's disability claim when it "noted but finally disregarded" some of the evidence and "utterly ignored" much of the rest.  *Smith*, 2003 U.S. Dist. LEXIS 13749 at *18.

Ignoring the voluminous evidence supporting Mr. Smith's claim, Continental refused to acknowledge his disability and instead had him secretly videotaped to verify his disability status.  *Id.* at *20-*21.  The videotape surveillance was inconclusive, however, because the investigator was only able to record images of Mr. Smith traveling to and from a doctor's appointment and walking with the aid of a cane.  *Id.*

Finally Continental sent Mr. Smith's disability file for an independent medical review.  *Id.* at *3.  The reviewing physician discredited Mr. Smith's representations about his condition and concluded that because diagnostic tests were unable to substantiate the level of pain Mr. Smith reported, that he was not disabled or entitled to benefits.  *Id.* at *30-*31.

Continental acted in bad faith when it refused to credit Mr.

Smith's self-reported pain symptoms, particularly in light of the abundance of medical and occupational reports supporting his claim. *See Hines v. Unum Life Ins. Co. of Am.*, 110 F. Supp. 2d 458 (W.D. Va. 2000) (finding bad faith when insurance company ignored treating physician's assessment of claimant's disability and "readily jumped to secretly videotape" his activities in an attempt to show that he was not disabled).

Once a sufficient finding of bad faith has been made, consideration of the remaining four factors necessarily follows. *Id.* (*citing O'Bryhim v. Reliance Standard Life Ins. Co.*, 1999 U.S. App. LEXIS 19232 (4th Cir. Aug. 16, 1999)).  The Court further finds that: (1) Continental has the ability to pay Mr. Smith's attorney's fees;[3] (2) granting attorney's fees is likely to deter other insurers from engaging in similar bad faith conduct; (3) Mr. Smith's success in establishing that the insured's subjective pain reports should be credited in the absence of substantial evidence to the contrary has resolved a significant legal question with regards to ERISA; and (4) Mr. Smith's claim, relative to Continental's defense, had much greater merit.  Accordingly, Mr. Smith is entitled to an award of

---

[3]Continental is a subsidiary of CNA Financial Corporation ("CNA"). Pl.'s Ex. 1 (printed document from CNA's website, *at* http://www.cna.com (last visited Oct. 21, 2003)).  The website explains that CNA is the fourth largest U.S. commercial insurer, insuring 1 million business and professional policyholders, 1.3 million life and long-term care policyholders, 2.7 million employees in group disability plans, and has 12.3 billion dollars in revenues. *Id.*  This information clearly establishes Continental's ability to pay reasonable attorney's fees.

reasonable attorney's fees.

## II.  Determining Reasonable Attorney's Fees

### A.  The Lodestar Figure

The Fourth Circuit calculates attorneys' fees by determining a "'lodestar'[4] figure by multiplying the number of reasonable hours expended times a reasonable rate."  *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (*citing Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986)).

The calculation of the lodestar figure depends on an analysis of 12 factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (*citing EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990)).  The lodestar may be adjusted upward or downward based on consideration of the 12 factors.  *Cox v. Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 481 (E.D. Va. 2002).

---

[4]A lodestar is a guiding figure, or starting point for the court. *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 644 F. Supp. 551, 554 (D. Md. 1986).

B.   The Lodestar Analysis

Mr. Smith's attorney, Scott Elkind ("Mr. Elkind"), submits that he spent a total of 93.6 hours working on this case from September 2002 through September 2003.  Pl.'s Am. Billing Summ. 3.

1.   Time and Labor Required to Litigate the Suit

Continental argues that because Mr. Smith was not successful on all of his claims before the Court, that he is not entitled to recover all of his attorney's fees.  Def.'s Opp'n to Pl.'s Mot. for Att'ys Fees & Costs 10-12.  The calculation of the lodestar figure and subsequent adjustment is made more complicated when the plaintiff has prevailed, but was not successful on every claim.  *Brodziak*, 145 F.3d at 197.  When a plaintiff achieves only partial victory, hours billed for handling the case as a whole may be excessive in proportion to the achieved success.  *Id.* at 196.  The Fourth Circuit has explained that in such circumstances "the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not."  *Id.* at 197.

If the claims involve a "common core of facts," it is appropriate for counsel to devote time to the case as a whole, making it difficult to divide the "hours expended on a claim-by-claim basis."  *Id.* (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  When this is the case, "the court's rejection of or

failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435.

Mr. Smith was successful in his claim of wrongful denial of benefits, but the Court denied his claim for wrongful denial of waiver of premium coverage under the plan. *Smith*, 2003 U.S. Dist. LEXIS 13749 at \*34-\*35. In denying this claim, the Court reasoned that "[Continental's] decision to deny 'waiver of premium' coverage under the group life insurance policy . . . followed necessarily--and reasonably--upon the determination (albeit erroneous) that [Mr. Smith] was [not disabled]." *Id.* at \*32.

Because Continental had considered the waiver of premium issue in light of its erroneous denial of benefits, the determination of the waiver of premium coverage was remanded to the insurance company for further consideration. *Id.* The two claims, therefore, are so intertwined that the Court's decision on one necessarily affected the treatment of the other.

Given the close relationship of the two claims, and because the relief sought in the case has "clearly been achieved by the plaintff[], defendant[] should not be entitled to a reduction in fees merely because the court did not base its conclusions on all the theories which the plaintiff[] advanced to support [his] claim to the relief granted." *Dameron*, 644 F. Supp. at 556.

Continental further contends that Mr. Elkind, having spent a

total of 21 hours working on the fee petition and supporting affidavits, devoted excessive time to the petition, and that Continental should not be required to pay for the excess.  Def.'s Opp'n to Pl.'s Mot. for Att'ys Fees & Costs 14.

There are no established guidelines for assessing whether an ERISA attorney has devoted an unreasonable amount of time to creating a fee petition.  The Fourth Circuit has established guidelines, however, for determining whether an excessive amount of time has been spent on a petition for attorneys' fees for claimants in cases involving the civil rights provisions of the United States Code.  *Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir. 1995).

Title 42, section 1988 of the United States Code provides that successful litigants in civil rights cases may recover "a reasonable attorney's fee as part of [their recoverable] cost[s]."  42 U.S.C. § 1988(b) (2003).  To determine whether an attorney's fee is reasonable, the Fourth Circuit uses the same 12 factor lodestar analysis that is used to determine the reasonableness of an ERISA claimant's fee request.  *Trimper*, 58 F.3d at 73.  Because the analysis used to test for reasonable fees in civil rights cases is identical to that used to evaluate fees in ERISA cases, the Court turns to the Fourth Circuit's cases regarding the preparation of fee petitions in civil rights cases for instruction in evaluating the amount of time spent on

9

the fee petition in this case.

Whether substantial time spent preparing a fee petition in civil rights cases is deemed reasonable depends on the complexity of the case. *See EEOC*, 898 F.2d at 966 (finding expenditure of over twenty percent of time on preparation of fee petition unreasonable in light of relative simplicity of the case); *Daly*, 790 F.2d at 1080 (affirming district court's refusal to grant attorneys' fees for time spent on fee petition when attorney spent an unreasonable amount of time on the fee petition and there was no dispute over entitlement to attorneys' fees).

This case involved complex factual and legal issues which required detailed analyses by the attorneys for both sides. *See Smith*, 2003 U.S. Dist. LEXIS 13749 at *2-*33. Adding to the overall complexity of the case was the dispute over the amount of attorney's fees to which Mr. Smith is entitled. *See* background *supra*. In light of the difficulty of the case, Mr. Smith's attorney's use of 21 of the total 93.6 hours that he worked on the case to prepare the fee petition is reasonable. Mr. Smith's award of attorney's fees, therefore, will not be reduced by the amount of time his attorney spent on the fee petition.

2.   Novelty and Difficulty of the Questions Raised

Continental argues that Mr. Smith's case was neither novel nor difficult. Def's Opp'n to Pl.'s Mot. for Att'ys Fees & Costs 9-10. Although ERISA denial of benefits cases are fairly common,

the facts of this case were quite complex and the issue of when a patient's self-reports of pain should be credited was novel.  *See Smith*, 2003 U.S. Dist. LEXIS 13749 at *2-*33.

3. Skill Required to Properly Perform the Legal Services Rendered

It is undisputed that ERISA litigation requires comprehensive knowledge of statutory and common law.  *See* Pl.'s Mot. for Att'ys Fees & Costs 10.  Mr. Elkind's affidavit indicates that he has handled over 50 ERISA cases since 1998, with a level of success indicative of competency in ERISA representation.  Elkind Aff. ¶ 4.

4. Attorney's Opportunity Costs in Pressing the Instant Litigation

Mr. Elkind, as an attorney representing plaintiffs in ERISA benefits cases, is a rare commodity.[5]  In order to prepare effectively for such litigation, an attorney must devote many hours to a single case.  Pl.'s Mot. for Att'ys Fees & Costs 11.  Accordingly, ERISA plaintiffs' attorneys may take on only a limited number of cases at a time, sacrificing the opportunity to handle a larger volume of cases in other areas.

5. Customary Fee for Like Work

---

[5] *See* Glass Aff. ¶ 5 (explaining "the number of claims for benefits under ERISA are growing yet there are very few attorneys willing to represent plaintiffs in these cases"); Neuworth Aff. ¶ 8 (explaining that ERISA litigation is "time-consuming, difficult and not desirable to litigate").

11

Mr. Elkind's usual hourly rate for ERISA representation is $300. Elkind Aff. ¶ 7. The local rules of the U.S. District Court for the District of Maryland ("District's Fees Guidelines") suggest that lawyers with Mr. Elkind's experience charge between $200-$275 per hour. App. B (D. Md. 2001). These figures are intended solely to provide guidance when determining the lodestar figure, and the Court may, at its discretion, adjust the figure when appropriate. *Id.* Mr. Elkind seeks at least $275 for his services, and asks the Court to award an enhanced fee of $300 per hour. Pl.'s Mot. for Att'ys Fees & Costs 12.

A fee applicant must produce "specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which she seeks an award." *Taylor v. Runyon*, 1999 U.S. Dist. LEXIS 3706, *13-*14 (E.D.N.C. 1999) *(quoting Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). The prevailing market rate is established "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Id.* (*quoting Spell v. McDaniel I*, 824 F.2d 1380, 1403 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988)).

In support of his claim for enhanced fees, Mr. Elkind

12

submitted two affidavits of local attorneys, an affidavit from an Illinois attorney, and six affidavits from attorneys in California. Each affidavit is by an ERISA attorney with a similar level of experience as Mr. Elkind, and each charges at least $300 per hour for his or her services. See Pl's Ex. 2-8 (affidavits of attorneys Richard Neuworth, Marc Schechter, Michael McKuin, Gary Nawa, Ronald Dean, Charles Flesihman, and Jennifer Kurzon); Pl.'s Add'l Ex. 1-2 (affidavits of attorneys David Bryant and Benjamin Glass).

To determine the prevailing market rate for an ERISA attorney practicing in the Fourth Circuit, the Court will rely on Mr. Elkind's affidavit regarding his billing practices and those affidavits that were produced by ERISA attorneys practicing within the Fourth Circuit.

Mr. Benjamin Glass, an attorney licensed to practice in Virginia and the District of Columbia practices plaintiffs' ERISA litigation in the Mid-Atlantic region. Glass Aff. ¶ 1, 3. Mr. Glass charges $300 per hour for his services. *Id.* at ¶ 6.

Mr. Richard Neuworth is a local ERISA attorney who has litigated in this Court for nearly twenty years. Neuworth Aff. ¶ 1. Mr. Neuworth understands that an average of $300 per hour for attorneys with Mr. Elkind's experience is reasonable in this area. *Id.* ¶ 9.

Although Continental's attorneys' billing records may be

13

probative of whether Mr. Elkind's fees are reasonable,[6] there is enough evidence before the Court to inform its analysis of Mr. Smith's fee request.  Accordingly, Continental's motion to file a surreply will be denied.

      6.   Attorney's Expectations at the Outset of the Litigation

Because this case was not taken on a contingent basis this factor will not be considered in assessing fees.  *Taylor*, 1999 U.S. Dist. LEXIS 3706 at *23.

      7.   Time Limitations Imposed By the Client or Circumstances

Mr. Elkind's work on this case required that he devote a considerable amount of time to it.  *See* II(B)(1) *supra*.  Because his effort was consistent with the complexity of the case, Mr. Elkind's requested fees appear reasonable.

      8.   Amount in Controversy and the Results Obtained

The past benefits wrongfully denied to Mr. Smith are valued at approximately $125,000.  Pl.'s Mot. for Att'ys Fees & Costs 13.  The Court ordered that Continental reimburse past benefits, pay pre-judgment interest, and pay continuing benefits for so long as Mr. Smith is entitled to them.  *Smith*, 2003 U.S. Dist. LEXIS 13749 at *34-*35.  Mr. Smith's overall recovery of benefits is, therefore, substantial.  Pl.'s Mot. for Att'ys Fees & Costs

---

[6]*See Stastny v. S. Bell Tel. & Tel. Co.*, 77 F.R.D. 662, 663 (W.D.N.C. 1978) (finding opposing attorneys' fees probative in determining whether claimant's requested attorneys' fees were reasonable because both sides must perform similar work on the case).

13. This factor supports the reasonableness of the requested attorney's fees.

   9. Experience, Reputation and Ability of the Attorney

   Mr. Elkind has been practicing law for eleven years. Elkind Aff. ¶ 3. Having practiced primarily in disability benefits, Mr. Elkind founded Elkind & Shea in 2002 so that he could focus entirely on disability benefits work. *Id.*

   Mr. Elkind has presented at multiple disability law seminars, and has earned a reputation as an attorney "quite skilled in ERISA litigation." Neuworth Aff. ¶ 8; *see also* Bryant Aff. ¶ 8 (ranking Mr. Elkind as "one of the top 25 attorneys in the country that practice in the ERISA field.")

   Mr. Elkind's demonstrated skill, experience, and reputation support his fee request.

   10. Undesirability of the Case Within the Legal Community
       in Which the Suit Arose

   It is undisputed that ERISA cases are not popular among plaintiffs' lawyers. *See* n. 6 *supra*. Considering that few attorneys are willing and able to provide competent representation to individuals whose benefits have been wrongly denied, and the need to encourage attorneys to take on such cases, Mr. Elkind's requested fee is reasonable.

11. Nature and Length of the Professional Relationship Between Attorney and Client

Mr. Elkind has worked with Mr. Smith from the time when his benefits were first denied, through several administrative appeals, until the present. Pl.'s Mot. for Att'ys Fees & Costs 14. An attorney's commitment to see a client through a complex and protracted disability benefits appeal is to be encouraged. The attorney's commitment to his client in this case supports the hourly fee that he has requested.

12. Attorneys' Fees Awards in Similar Cases

In *Johannssen v. District No. 1--Pacific Coast District*,[7] an ERISA case in which the plaintiffs prevailed, the Court awarded attorneys' fees of $240 to $275 per hour. *Id.* at *5. At that time, the District's Fees Guidelines suggested a maximum rate of $225 per hour for attorneys with the level of experience of the plaintiffs' counsel. *Id.* The Court reasoned that because the District's Fees Guidelines were intended solely for practical guidance, and the plaintiffs produced evidence that other local attorneys working on ERISA cases charged similar fees, awarding the requested fee was appropriate. *Id.*

Mr. Elkind is entitled to receive $300 per hour for his work on this case because his requested fee reflects the complexity of

---

[7] 2001 WL 770987 (D. Md. 2001).

the case, comports with fees charged by other ERISA attorneys in the region, and such an award will serve to encourage other attorneys to "'continue offering legal representation in undesirable and difficult ERISA litigation.'" *Dameron*, 644 F. Supp. at 559 *(quoting McDaniel v. National Shopmen Pension Fund*, No. C83-1484C, slip op. at 7 (W.D. Wash., Apr. 4, 1986) (adding 10% enhancement to attorneys' fee award)).

The attorney's fees to be awarded in this case are as follows:

2002:   6.8 hours x $300 = $2,040.00

2003:   86.8 hours x $300 = $26,040.00

Total:  93.6 hours x $300 = $28,040.00

The Plaintiff's costs of $450.00, unchallenged by the Defendant, will also be awarded.

### CONCLUSION

For the reasons discussed above, the Plaintiff's motion for attorney's fees and costs will be granted and the Defendant's motion for leave to file a surreply will be denied.

 October 27, 2003                         /s/
Date                               William D. Quarles, Jr.
                                   United States District Judge